**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE,**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **NICHOLAS ENNIS,** | : | |
| **FIREARMS POLICY COALITION, INC.,** | : | |
| **and FIREARMS POLICY FOUNDATION,** | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| **v.** | : | Civil Action No. – |
| | : | Complaint – Civil Rights |
| | : | |
| | : | |
| **COUNTY OF SUMNER, TENNESSEE;** | : | |
| **ANTHONY HOLT in his official capacity** | : | |
| **as County Executive and County Mayor** | : | |
| **of Sumner County, TN; ROY "SONNY"** | : | |
| **WEATHERFORD in his official capacity** | : | |
| **as Sumner County Sheriff; CHRIS** | : | |
| **SANFORD in his individual and official** | : | |
| **capacities; KYLE MAHANEY in his** | : | |
| **individual and official capacities;** | : | |
| **JUSTIN DOWNS in his individual and** | : | |
| **official capacities; and CARL EDISON** | : | |
| **in his individual and official capacities,** | : | |
| | | |
| Defendants | | |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

Plaintiffs Nicholas Ennis, Firearms Policy Coalition, Inc. ("FPC"), and

Firearms Policy Foundation ("FPF"), by and through their undersigned counsel,

hereby raise the following complaints against Defendants County of Sumner,

Tennessee, Anthony Holt in his official capacity as County Executive and County

Mayor of Sumner County, Tennessee, Roy "Sonny" Weatherford in his official

capacity as Sumner County Sheriff under the auspices of the Sumner County

1

Sheriff's Office ("SCSO"), and Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison in their individual capacities and official capacities as peace officers for the Sumner County Sheriff's Office (collectively "Defendants").

## **INTRODUCTION**

1. As a law-abiding resident of Sumner County who supports and lawfully exercises the Second Amendment right to keep and bear arms, Plaintiff Ennis responsibly advocates for this right through peaceable political speech, including on the controversial topic of gun control measures. This case concerns one form of that speech—a window sticker displayed on Plaintiff Ennis's truck that contains the message "Fuck Gun Control." While, to some, this might be a distasteful or even vulgar way of making the point, it is nevertheless protected as part of the robust public debate on a topic of national importance that not only must be permitted but encouraged under clearly established constitutional law. The political message on Plaintiff Ennis's sticker is legally indistinguishable from the message at issue in the seminal free speech case of *Cohen v. California*, 403 U.S. 15 (1971), where Cohen strode through a courthouse in 1968 wearing a jacket bearing the slogan "Fuck the Draft"—at a time when the draft was at least as controversial as gun control laws are now—and the high court ruled he was fully within his free speech rights to do so.

2. Like Cohen's speech, Plaintiff Ennis's speech about gun control cannot be suppressed for merely being "offensive" to the sensibilities of some people,

because no one who saw the message "could reasonably have regarded the words . . . as a direct personal insult." *Cohen*, 403 U.S. at 20. The speech also cannot be regulated as "obscene" because speech may be suppressed as obscene only if it describes sexual conduct in a patently offensive way, appeals to prurient interests in sex, and lacks any serious literary, artistic, political, or scientific value. "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic." *Id*. Plaintiff Ennis's sexually-neutral message about the hot button political issue of gun control fits nowhere within the definition of "obscene" speech subject to regulation.

3. Yet, the Defendants in this case have used their law enforcement powers to target Plaintiff Ennis's pro-Second Amendment speech for suppression. They surveilled Plaintiff Ennis at a gas station where he was refueling his truck, subjected him to a traffic stop as soon as he attempted to drive away, detained him there while accusing him of violating a state law that regulates the content of messages displayed on motor vehicles, issued him a citation for displaying an "obscene and offensive" message, and actively pressed the charge forward into a prosecution—all solely on the basis of his classically protected speech of "Fuck Gun Control." Defendants' enforcement actions against Plaintiff Ennis, as well as other Sumner County residents whom they have targeted over similar speech, expose the existence of law enforcement policies, practices, or customs which unconstitutionally infringe residents'

constitutional rights to peaceably exercise their free speech rights with political messages on or in their motor vehicles without being subjected to unreasonable search and seizure, unlawful censure, or unconstitutional retaliation for engaging in such speech.

4. This suit is a challenge to those policies, practices, and/or customs under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the counterpart provisions of the Tennessee Constitution, on behalf of Plaintiff Ennis, the members and supporters of Institutional Plaintiffs FPC and FPF, and all similarly situated individuals residing in Tennessee, who have already suffered constitutional injury at the hands of Defendants and who continue to face credible threats of such injury unless and until they obtain the relief they seek through this action.

## PLAINTIFFS

5. Plaintiff Ennis is a resident of the city of Westmoreland in Sumner County, Tennessee. Plaintiff Ennis seeks to vindicate and uphold his constitutionally guaranteed rights to engage in protected speech through lawful and peaceful expression of his views on matters of public interest and concern, especially about the ever-present public controversy over gun control measures being pursued in Tennessee and around the country, without being subjected to unreasonable search or seizure, unlawful censure, or unconstitutional retaliation for engaging in such protected speech activities. Ennis is a member and supporter of Plaintiffs FPC and FPF.

4

6. Plaintiff Firearms Policy Coalition (FPC) is a non-profit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. FPC has members in the State of Tennessee, including Plaintiff Ennis. The purposes of FPC include defending and promoting the People's rights, advancing individual liberty, and restoring freedom. FPC serves its members and the public through direct and grassroots advocacy, legal efforts, and education aimed at defending the fundamental rights, privileges, and immunities guaranteed by the United States Constitution and embedded into the fabric of this nation through its deeply rooted histories and traditions, especially the fundamental right to keep and bear arms enshrined in the Second Amendment. Part and parcel of effectively pursuing FPC's mission is preserving and defending the right and exercise of free speech under the First Amendment on the subject of the Second Amendment right to keep and bear arms, including especially speech concerning gun control measures in Tennessee and around the country, which are matters of important public concern. Of equal concern to FPC's core mission are education and advocacy designed to protect its members and the public from being subjected to unreasonable search or seizures, unlawful censure, or unconstitutional retaliation for engaging in such protected speech activities.

7. Plaintiff Firearms Policy Foundation (FPF) is a non-profit organization incorporated under the laws of Delaware with a place of business in

Sacramento, California. FPF has members in the State of Tennessee, including Plaintiff Ennis. FPF serves the public through charitable activities, including legal research, litigation, and education, with a focus on advancing constitutional rights. Like FPC, part and parcel of effectively pursuing FPF's mission is preserving and defending the right of exercise of free speech under the First Amendment on the subject of the Second Amendment right to keep and bear arms, including especially speech concerning gun control measures in Tennessee and around the country, which are matters of important public concern. Of equal concern to FPF's core mission are education and advocacy designed to protect its members and the general public from being subjected to unreasonable search or seizure, unlawful censure, or unconstitutional retaliation for engaging in such protected speech activities.

8. The members and supporters of both FPC and FPF, including Plaintiff Ennis and all those similarly situated to him, have been adversely and directly harmed by the law enforcement actions, practices, policies, and customs of Defendants being challenged herein, and they remain under a credible threat of continuing harm unless and until the relief sought herein is obtained. Both FPC and FPF have expended and diverted resources because of the actions, policies, customs, and practices of Defendants, including by investigating Defendants' prior enforcement actions, and funding and supporting this and similar civil actions designed to protect and preserve on behalf of their members and the general public the constitutional rights to engage in

6

protected speech without being subjected to unreasonable search or seizure, unlawful censure, or unconstitutional retaliation. FPC and FPF both bring this action on their own behalf, on behalf of their members and supporters who possess all the indicia of membership, and on behalf of similarly situated members of the public. The challenged actions, policies, customs, and practices of Defendants have caused both FPC and FPF to expend time and resources that would otherwise be available for their core missions in protecting the rights and interests of their members, supporters, and the general public.

9. Plaintiff Ennis brings this action on behalf of himself, and as a representative of the class of similarly situated individuals consisting of law-abiding Tennessee residents and visitors who, like him, seek to peaceably exercise their constitutionally guaranteed rights of free speech through expression of their views on matters of public interest and concern, especially about the ever-present public controversy over gun control measures being pursued in Tennessee and around the country, and without being subjected to unreasonable search or seizure, unlawful censure, or unconstitutional retaliation for engaging in such protected speech activities.

10. Institutional Plaintiffs FPC and FPF are bringing this action as public interest organizations, whose Tennessee members similarly seek to exercise such free speech rights and without being subjected to unreasonable search or seizure, unlawful censure, or unconstitutional retaliation for engaging in

7

the same. As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of potentially numerous similarly situated residents whose rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution have been, are being, and remain under a continuing threat of being, violated by Defendants' unconstitutional enforcement and threatened enforcement actions under T.C.A. §§ 55-8-187 and § 39-17-901, and their related polices, practices, or customs targeting protected speech for suppression and chilling through unreasonable search or seizure, unlawful censure, and unconstitutional retaliation.

11. Considerations of necessity, convenience, and justice warrant relief to both Plaintiff Ennis and Institutional Plaintiffs in a representative capacity. Furthermore, Institutional Plaintiffs are uniquely situated and able to communicate with and provide notice to their members, supporters, and other constituents who are or would be part of any identifiable class of individuals for whose benefit this Court may grant the requested relief.

## **DEFENDANTS**

12. Defendant County of Sumner, Tennessee ("County") is a corporate governmental entity established under the laws of the State of Tennessee, *see* T.C.A. §§ 5-1-101 & 5-1-103, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for managing all business of the County, which includes the policies, customs, and practices at issue in

8

this case, through its elected county officials, *see* T.C.A. §§ 5-1-104(a) & 6-2-1-201(28)(A), who include Defendants Anthony Holt and Sonny Weatherford.

13. Defendant Anthony Holt is the elected County Executive and County Mayor of Sumner County, Tennessee ("Holt" or "County Executive"). Tenn. Const., Art. 7, § 1 ("The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly.") As the County Executive, Defendant Holt is the County's "chief executive officer," *see* T.C.A. § 5-6-101(d)(1), and he is responsible for "exercising general supervision of the county government," *see* T.C.A. § 5-6-106(a). The County government includes the office of the SCSO maintained by Defendant Weatherford. Defendant Holt is a "person" within the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, acting under color of state law at all times relevant to this Complaint. He is sued in his official capacity.

14. Defendant Sonny Weatherford ("Weatherford" or "Sheriff") is the elected Sheriff of Sumner County, Tennessee and, in this capacity, serves as a "county official." *See* Tenn. Const., Art. 7, § 1; T.C.A. § 5-23-102(4). In such capacity, Defendant Weatherford is responsible for overseeing and exercising law enforcement authority throughout the County, *see* T.C.A. § 8-8-201(b)(1), which duties include conducting investigations, searches, and seizures, and issuing citations for alleged violations of T.C.A. §§ 55-8-187. Defendant

9

Weatherford is also responsible for supervising and training all law enforcement officers under his command, including Defendants Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison. In executing these responsibilities, Defendant Weatherford is empowered to and does "make decisions and adopt policies" designed to implement his law enforcement, supervisory, and training authority. *See* T.C.A. § 5-23-108. He maintains the "Sumner County Sheriff's Office," in Gallatin, Tennessee, for these purposes. He is a "person" within the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, acting under color of state law at all times relevant to this Complaint. He is sued in his official capacity as Sumner County Sheriff.

15. Defendant Chris Sanford is and was at all times relevant to this Complaint a law enforcement officer (with the title of deputy sheriff, on information and belief) acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of Defendant Weatherford, and under a delegation of authority from Defendant Weatherford to carry out the actions, policies, customs, and practices at issue herein. Defendant Sanford is sued in his individual capacity and in his official capacity as a law enforcement officer for the SCSO operating under such delegated authority.

16. Defendant Kyle Mahaney is and was at all times relevant to this Complaint a law enforcement officer (with the title of deputy sheriff, on information and belief) acting under the color of Tennessee law as an agent, servant, and

employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of Defendant Weatherford, and under a delegation of authority from Defendant Weatherford to carry out the actions, policies, customs, and practices at issue herein. Defendant Mahaney is sued in his individual capacity and in his official capacity as a law enforcement officer for the SCSO operating under such delegated authority.

17. Defendant Justin Downs is and was at all times relevant to this Complaint a law enforcement officer (with the title of lieutenant, on information and belief) acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of Defendant Weatherford, and under a delegation of authority from Defendant Weatherford to carry out the actions, policies, customs, and practices at issue herein. Defendant Downs is sued in his individual capacity and in his official capacity as a law enforcement officer for the SCSO operating under such delegated authority.

18. Defendant Carl Edison is and was at all times relevant to this Complaint a law enforcement officer (with the title of major, on information and belief) acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of Defendant Weatherford, and under a delegation of authority from Defendant Weatherford to carry out the actions, policies, customs, and practices at issue herein. Defendant Edison is sued in his individual capacity

11

and in his official capacity as a law enforcement officer for the SCSO operating under such delegated authority.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, as well as under 28 U.S.C. §§ 1343 and 42 U.S.C. § 1983. Plaintiffs herein are seeking relief this Court is empowered to grant under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and under its inherent legal and equitable authority. To the extent Plaintiffs' claims allege or may be construed to allege or embrace state laws, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

20. Plaintiffs' claims for compensatory and nominal damages are authorized by 42 U.S.C. § 1983, and the Court has jurisdiction to award costs and reasonable fees to prevailing plaintiffs under 42 U.S.C. § 1988.

21. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events that give rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

22. Plaintiff Ennis seeks to peaceably advocate his pro-Second Amendment stance and concerns regarding gun control measures in various lawful and

innocuous ways, including with the sticker on his truck expressing his general view of such measures, which is the subject of this case.

23. The sticker image consists of two firearms flanking the letters "U" and "C," under which appear the words "gun control" and can be construed to illustrate the word "fuck," such that the sticker can be interpreted to convey the message "Fuck Gun Control." *See* Exhibit A.

24. On the afternoon of September 25, 2019, Plaintiff Ennis stopped at a gas station in Sumner County to refuel his truck. His fiancée stopped there around the same time to refuel her vehicle.

25. While Plaintiff Ennis was refueling his fiancée's vehicle, she informed him that two uniformed law enforcement officers, Defendants Sanford and Mahaney of the SCSO, were sitting in their marked patrol car watching him and his truck.

26. After Plaintiff Ennis finished refueling his fiancée's vehicle, he got back inside his truck and proceeded to lawfully drive toward the exit of the gas station.

27. The truck was in good working condition, had no visible signs of safety issues, damage, or registration violations, and Plaintiff Ennis had not committed any moving violations which would have warranted any reasonable suspicion or probable cause to conduct a traffic stop on the basis of any safety issues or other moving violations.

28. As Plaintiff Ennis prepared to lawfully turn out of the station onto an intersecting road, Deputy Sanford got behind him in the SCSO patrol car and activated the patrol car's lights, signaling Plaintiff Ennis to stop. Plaintiff Ennis immediately complied, stopping the truck where it was and waiting for further direction from the deputies.

29. Defendant Sanford approached Plaintiff Ennis's driver-side window and told him he was stopped because the sticker on his truck violated the state law regulating "obscene and offensive" speech. Defendant Sanford stated no other basis or justification for the traffic stop. Plaintiff Ennis believed that, to the contrary, the message conveyed through the sticker was constitutionally protected free speech and thus asked Defendant Sanford how the sticker could be considered "obscene" or "offensive" so as to justify subjecting him to the traffic stop. Defendant Sanford was unable or unwilling to answer. So, Plaintiff Ennis requested to speak to his supervisor.

30. Defendant Sanford went back to the patrol car and summoned Defendant Mahaney, who was acting as Defendant Sanford's field training officer ("FTO") at the time.

31. Defendants Sanford and Mahaney then both approached Plaintiff Ennis in the truck where he remained detained. They dismissed his challenge to the traffic stop and the allegation that he had violated the law by displaying the sticker about gun control on his truck, saying they would not "argue about it on the side of the road" or words to that effect.

14

32. Defendant Sanford pressed forward with the allegation that Plaintiff had
committed a crime, issuing against him a formal citation for violating T.C.A.
§ 55-8-187, which prohibits "the display of obscene or patently offensive . . .
bumper stickers, window signs or other markings on or in a motor vehicle
that are visible to other drivers." The written basis of the citation was that
Defendant Sanford "did observe said vehicle with window sticker depicting
'FUCK Gun Control,'" which Defendant Sanford described as an "Obscene
Sticker."

33. T.C.A. § 55-8-187 provides:

> To avoid distracting other drivers and thereby reduce the likelihood of
> accidents arising from lack of attention or concentration, the display of
> obscene and patently offensive movies, bumper stickers, window signs
> or other markings on or in a motor vehicle that are visible to other
> drivers is prohibited and display of such materials shall subject the
> owner of the vehicle on which they are displayed, upon conviction, to a
> fine of not less than two dollars or more than fifty dollars.

34. The terms "obscene" and "patently offensive" within the meaning of T.C.A. §
55-8-187 are defined in T.C.A. § 39-17-901.

35. Section 39-17-901, subdivision (10)(A) – (10)(C), defines "obscene" to mean:
"the average person applying contemporary community standard would find
that the work, taken as a whole, appeals to the prurient interest; the average
person applying contemporary community standards would find that the
work depicts or describes, in a patently offensive way, sexual conduct; and
the work, taken as a whole, lacks serious literary, artistic, political, or
scientific value." "Prurient interest" means "a shameful or morbid interest in

15

sex." *Id.* at § 39-17-901(12). Section 39-17-901, subdivision (11), defines

"patently offensive" for purposes of the obscenity prohibition as "that which

goes substantially beyond customary limits of candor in describing or

representing such matters" – i.e., the sexually explicit matters of concern in

subdivision (10). Thus, on its face, the prohibition under T.C.A. § 55-8-187

reaches only speech related to sexual conduct of a prurient nature,[1] and has

no application to sexually-neutral uses of the word "fuck" or similar words,

such as in messages like Plaintiff Ennis's of "Fuck Gun Control."[2]

36. Defendant Mahaney remained present and actively involved on the scene as

Defendant Sanford prepared and issued the citation for the alleged violation

of T.C.A. § 55-8-187 based on this speech about gun control, indicating his

agreement with and support of his trainee's actions.[3]

---

[1] While T.C.A. § 55-8-187 proscribes the display of "obscene and patently offensive" material, suggesting it may proscribe such items when they are *either* "obscene" *or* "patently offensive," the term "patently offensive" in § 39-17-901 is not set out as a separately defined term with its own meaning. Instead, it is defined only in relation to definition of "obscene," for purposes of explaining the meaning of *that* term. Specifically, "patently offensive" is defined as "that which goes substantially beyond customary limits of candor in describing or representing *such* matters," T.C.A. § 39-17-901(11) (italics added), with "such" referring back to that portion of the obscenity definition which concerns works that depict or describe sexual conduct "in a *patently offensive* way," *id.* at § 39-17-901(10)(B) (italics added).

[2] It is well known that the word "fuck" is "[u]sed alone or as a noun or verb in various phrases to express annoyance, contempt, or impatience" concerning something or someone. LEXICO, Oxford English and Spanish Dictionary online; last visited August 23, 2020 (https://www.lexico.com/en/definition/fuck).

[3] The citation included an additional charge of failure to provide evidence of valid vehicle insurance because, after the deputies had stopped Plaintiff Ennis for

16

37. When Plaintiff Ennis continued to contest the legality of the enforcement actions taken against him for the display of the gun control message, Defendant Mahaney gave him the contact information of Defendant Downs and another senior SCSO officer, Sergeant Brandon Maynard, indicating Plaintiff Ennis must contact them with any further complaint.

38. Later the same day, Plaintiff Ennis contacted the SCSO, requesting to speak to Defendant Sanford's supervisor about challenging the citation. He was routed to Defendant Mahaney who advised that he was Defendant Sanford's "FTO." When Plaintiff Ennis asked to speak to someone with greater seniority in the SCSO, he was referred to Defendant Downs.

39. Plaintiff Ennis contacted Defendant Downs shortly thereafter the same day, asserting again that he believed the citation under T.C.A. § 55-8-187 violated his First Amendment free speech rights. Defendant Downs asked Plaintiff Ennis to describe the sticker at issue. He did so, and then Defendant Downs asked if the AR-15 and AK-47 graphics on the sticker "were positioned in such a way that would insinuate an F and K, which would spell out the word FUCK" (or words to that effect). Plaintiff Ennis confirmed that it is how the sticker would read. Downs then replied, "some may find that offensive, which

---

the display of the gun control message and conducted the obligatory checks of his driver license and insurance coverage, it became apparent that the insurance coverage for the truck had recently lapsed. *See* T.C.A. § 55-12-139(b)(1) ("At the time a driver of a motor vehicle is charged with any violation under chapters 8 and 10, parts 1-5 [which includes § 55-8-187] … an officer shall request evidence of financial responsibility as required by this section").

17

would fall under the statute in which [Plaintiff Ennis] was cited for [*sic*]" (or words to that effect). Defendant Downs further stated that he "wouldn't want [his] 10 and 12 [year-old children] to see something like that and ask what that meant or what that word meant" (or words to that effect). When Plaintiff Ennis continued to contest the enforcement actions as illegal, Defendant Downs simply said he was sorry Ennis felt that way. Plaintiff Ennis asked to speak to Sergeant Maynard, the other senior officer to whom Defendant Mahaney had initially referred him, but Defendant Downs referred him to Defendant Edison, because Defendant Edison was Defendant Downs's supervisor.

40. After his phone call with Plaintiff Ennis, Defendant Downs emailed Defendant Edison (copying Sergeant Brandon Maynard). *See* Exhibit B. In the email, Defendant Downs summarized his conversation with Plaintiff Ennis and advised that Plaintiff Ennis had been referred to Defendant Edison to take his complaint to the next level in the chain of command. Defendant Downs's summary of the conversation explained how he had told Plaintiff Ennis that some people may find the message "offensive," which justified the citation, and that he "wouldn't want [his] 10 and 12 [year-old children] to see something like that and ask what that meant or what that word meant." Exhibit B.

41. Plaintiff Ennis called and reached Defendant Edison the next day, September 26, 2019. During the call, Defendant Edison did not dispute any of

the actions of the deputies involved; nor did he dispute Defendant Downs's claims that the citation was supposedly justified based on the "offensive" nature of the gun control message. Instead, he said he could not or would not question the validity of the enforcement actions because he was not present at the scene. He said Plaintiff Ennis would just have to face the judge if he wished to challenge the actions. Defendant Edison also commented that he thought it would "be interesting to see what transpires in court on that one."

42. As a direct result of the law enforcement actions taken against him in issuing him a citation for violating T.C.A. § 55-8-187 and pressing forward the citation in the face of his legitimate complaints and requests that Defendants abandon pursuit of this charge targeting his free speech, Plaintiff Ennis remained the subject of prosecution for more than three months in the General Sessions Court of Sumner County. He mounted a strenuous constitutional defense through FPC and FPF-funded legal counsel, including by filing an extensive legal brief and paying for a court reporter to attend and record the scheduled court proceedings, until the County prosecutor finally abandoned the matter *nolle prosequi* on January 3, 2020.

43. As a further direct result of the law enforcement actions taken against him, Plaintiffs Ennis, FPC, and FPF have been forced to invest time and monetary resources obtaining counsel to defend against this accusation that Plaintiff Ennis committed a crime under T.C.A. § 55-8-187. Plaintiff Ennis has also suffered the stress and anxiety naturally attendant to being detained in a

19

traffic stop, accused of a crime, issued a formal citation for violating state law, and being subjected to the prosecutorial powers of the government that flowed directly from the Defendants' issuance and pressing of the citation under T.C.A. § 55-8-187.

44. Upon information and belief, within the last six years, at least two other individuals in Sumner County have been cited by Sumner County Sherriff deputies for displaying stickers with messages containing the word "fuck." Upon information and belief, as in this case, in neither of these instances did the use of the word "fuck" appeal to any prurient sexual interests or otherwise relate to any sexual conduct.

45. Plaintiff Ennis remains under a credible threat of continuing or future similar law enforcement actions unconstitutionally targeting his exercise of the right to engage in such protected speech, as he intends to continue displaying the same message or similar messages on or in his motor vehicle while traversing the public streets and areas of Sumner County under Defendants' law enforcement jurisdiction. The class of similarly situated individuals whom Plaintiff Ennis represents—including all similarly situated members and supporters of Plaintiffs FPC and FPF—are and will remain under the same credible threat for displaying messages of this nature on or in their vehicles while traversing the streets and other areas of Sumner County under Defendants' law enforcement jurisdiction, unless and until Plaintiffs

20

obtain the declaratory and injunctive relief they seek against the practices, policies, and customs of Defendants being challenged herein.

**CLAIMS FOR RELIEF**

**COUNT I: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**UNCONSTITUTIONAL SEIZURE**
**(U.S. CONST., FOURTH & FOURTEENTH AMENDS.;**
**TENN. CONST. ART. 1, § 7)**

46. Plaintiffs hereby incorporate by reference the allegations set forth above as though fully set forth herein.

**A.      Clearly Established Fourth Amendment Principles**

47. The Fourth Amendment right to be free from unreasonable search and seizure applies to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 660 (1961). Tennessee's Constitution provides parallel protection for its citizens. Ten. Const., Art. 1, § 7 (declaring "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures").

48. "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

49. "In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *U.S. v. Lyons*, 687 F.3d 754, 762-63 (6th Cir. 2012).

21

50. T.C.A. § 55-8-187 is a criminal statute, a violation of which constitutes a Class C misdemeanor calling for a fine of up to $50. *See* T.C.A. §§ 39-11-110 & 55-8-103. Thus, reasonable suspicion is required for any traffic stop based on a suspected violation of this obscenity law.

51. "While 'reasonable suspicion' is a less demanding standard than probable cause," "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Id.* at 123-24 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). The officer must "possess[] a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts." *Lyons*, 687 F.3d at 763. This is an objective standard based on "an examination of all facts and circumstances within an officer's knowledge" at the time of the seizure. *Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007).

## B. Clearly Established First Amendment Principles

52. The First Amendment right to free speech is likewise incorporated against and applies to the states and all their political subdivisions, including the State of Tennessee and all its political subdivisions at the state and county level.

53. Article I, section 19 of the Tennessee Constitution similarly provides: "The free communication of thoughts and opinions, is one of the invaluable rights

22

of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

54. Under clearly established First Amendment and Tennessee constitutional jurisprudence, the loss of constitutionally protected freedoms, and in particular that of free speech, for even minimal periods of time, unquestionably constitutes irreparable injury warranting injunctive relief.

55. "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Leonard*, 477 F.3d at 357 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Thus, the mere fact that speech may be viewed or construed as "offensive" to some or even most others does not strip its protection, and "an 'undifferentiated fear or apprehension of disturbance . . . is not enough to overcome the right to freedom of expression.'" *Cohen*, 403 U.S. at 23. Rather, "offensive" speech is subject to lawful suppression only if it is designed to or reasonably likely to have the effect of inciting violence. *Sandul v. Larion*, 119 F.3d 1250, 1255-56 (6th Cir. 1996) (it is "clearly established that speech is entitled to First Amendment protection with the exception of fighting words").

56. Further, while states may regulate "obscene" speech, that speech must be sexually themed to be subject to any lawful suppression. *See Miller v.*

23

*California*, 413 U.S. 15, 27 (1973) ("Under the holdings accounted today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed."). Consistent with the definition of "obscene" for purposes of the prohibition under T.C.A. § 39-17-901(10) and § 55-8-187, to be "obscene," the speech must offend all three prongs of the *Miller* test: (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law"; *and* (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller* at 24.

57. Thus, in *Cohen*, Cohen was prosecuted for political speech very similar in nature to that of Plaintiff Ennis he was charged with disturbance of the peace for wearing a jacket in public bearing the words "Fuck the Draft." 403 U.S. at 16. The high court observed "while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric." *Id.* at 25. And, "while potentially offensive to some, no one else present could reasonably have regarded the words on appellant's jacket as a direct personal insult." *Id.* at 20. Because the message was not the sort of individually

targeted insult designed to or likely to start a fight, the high court held that Cohen "could not, consistently with the First and Fourteenth Amendments, be punished for asserting the evident position on the inutility or immorality of the draft his jacket reflected." *Id.* at 18. Ultimately, the message conveyed was an "exercise of the 'freedom of speech' protected from arbitrary governmental interference by the Constitution." *Id.* at 18-19.

### C. The Traffic Stop, Detention, and Charging of a Crime Were Objectively Unreasonable Under the Clearly Established Law

58. Viewed objectively in light of the clearly established law under the Fourth and First Amendments, it was unreasonable to believe either reasonable suspicion or probable cause[4] existed to conduct a traffic stop of Plaintiff Ennis's on the basis of the gun control message displayed on his truck, to further detain him for purposes of investigating the supposed commission of a crime in displaying of "obscene" or "offensive" speech, or to issue him a citation that charged him with violating T.C.A. § 55-8-187.

59. The message on the sticker did not satisfy any part of the multi-factor test for suppression of speech as "obscene" under *Miller*. To the contrary, and especially given the intense nationwide debate prevalent in the media for many years now as legislatures across the country seek to increasingly restrict citizens' access to firearms, this speech taking a public stance against

---

[4] The higher standard of "probable cause" exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Collazo*, 818 F.3d 247, 259 (6th Cir. 2016).

gun control measures represents classic, constitutionally protected political speech, because "such freedom will ultimately produce a more capable citizenry and more perfect polity." *Miller*, 413 U.S. at 24. And, no aspect of Plaintiff Ennis's speech could reasonably be interpreted as concerning sexual matter—*Cohen*, 403 U.S. at 20 ("Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic.")—much less a *prurient* sexual interest, i.e., "a shameful or morbid interest in sex," T.C.A. § 39-17-901(12).

60. The *Miller* test is equally applicable under the Tennessee Constitution. *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 524 (Tenn. 1993); *see also Rhoden v. Morgan*, 863 F. Supp. 612, 621 (M.D. Tenn. 1994) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214, n.10 (1975) ("Even depictions of nudity involving a minor constitute protected expression absent a showing that the depictions are 'in some significant way, erotic.'")). The message of "Fuck Gun Control" also could in no way reasonably be deemed the sort of "offensive" speech that is subject to lawful suppression, any more than Mr. Cohen's speech of "Fuck the Draft" could be deemed as such, since no viewer "could reasonably have regarded the words . . . as a direct personal insult." *Cohen*, 403 U.S. at 20. As the Sixth Circuit emphasized way back in 1996, by at least 1990, "it was clearly established" in this circuit that offensive speech is not subject to regulation "with the exception of fighting words." *Sandul v. Larion*, 119 F.3d at 1255.

26

61. Moreover, almost 20 years ago, the state Attorney General expressly opined that T.C.A. § 55-8-187, the law enforced against Plaintiff Ennis, was not intended to and would not reach messages like the one he was targeted for displaying on his truck. Specifically, the Attorney General opined that the law "will not reach bumper stickers that are in extremely poor taste but are not obscene" within the meaning of *Miller*. Tenn. Op. Atty. Gen. No. 04-086 (Tenn.A.G.), May 5, 2004 WL 1178408, *2. To illustrate, the Attorney General wrote, "bumper stickers such as 's..t happens', although unquestionably in poor taste, do not meet the constitutional or statutory standards for obscenity because they do not appeal to the purient [*sic*] interest." *Id.* Consequently, based on law that has "long been understood and adopted by the State of Tennessee," "they cannot be banned as obscene." *Id.*

62. Notably, on its face, T.C.A. § 55-8-187 has no application to such non-sexual speech. As explained above, *see* footnote 1, by the statute's own terms, it applies to "obscene and patently offensive" speech displayed on vehicles, as those terms are specifically defined in T.C.A. § 39-17-901, and that definition reaches *only* speech that "appeals to the prurient interest" and that "depicts or describes, in a *patently offensive way*, sexual conduct." T.C.A. § 39-17-901(10)(A), (10)(B), (11) (italics added). Thus, not only did Defendants Sanford and Mahaney act without any reasonable basis under the clearly established constitutional law but they acted without any legitimate statutory authority or other legal basis in stopping, detaining, and citing

27

Plaintiff Ennis for allegedly displaying "obscene" or "offensive" speech based on his display of the sexually-neutral message about gun control.

**D.    All Defendants Are Liable for the Constitutional Violations**

63. As the law enforcement officers directly and personally involved in the traffic stop, detention, and issuance of the citation against Plaintiff Ennis with no objectively reasonable basis for such enforcement actions against him, Defendants Sanford and Mahaney are responsible and liable for the constitutional injuries Plaintiff Ennis has suffered, both in their individual capacities and in their official capacities as agents, servants, and employees of the Sumner County Sheriff's Office who were acting under the color of law, under the supervision, training, and direction of Defendant Weatherford, and under a delegation of authority from Defendant Weatherford to carry out the actions giving rise to these injuries, which actions were based on policies, customs, and/or practices established, implemented, and/or propagated by Defendant Weatherford, Defendant Holt, and the County itself.

64. Defendants Downs and Edison were senior law enforcement officers within the SCSO who were on clear notice of the enforcement actions taken against Plaintiff Ennis by virtue of his legitimate complaints brought through the chain of command. They had the opportunity and authority to intervene but took no remedial action and instead expressly or tacitly ratified, approved, and/or supported the enforcement actions of the subordinate deputies and expressly or tacitly ratified, approved, and/or supported the pursuit of the

28

constitutionally invalid citation against Plaintiff Ennis. As such, Defendants

Downs and Edison are also responsible and liable for the constitutional

injuries Plaintiff Ennis has suffered, both in their individual capacities and

in their official capacities as agents, servants, and employees of the Sumner

County Sheriff's Office who were acting under the color of law, under the

supervision, training, and direction of Defendant Weatherford, and under a

delegation of authority from Defendant Weatherford to carry out the actions

giving rise to these injuries, which actions were based on policies, customs,

and/or practices established, implemented, and/or propagated by Defendant

Weatherford, Defendant Holt, and the County itself.

65. As Sumner County Sheriff, Defendant Weatherford is responsible for

establishing and implementing the policies, customs, and practices of the

SCSO; the appointment, training, supervision, discipline, and retention of the

SCSO personnel, including Defendants Sanford, Mahaney, Downs, and

Edison; and for the law enforcement activities of the SCSO peace officers

acting under his delegation of authority to carry out of the policies, customs,

and practices that Defendant Weatherford establishes and implements.

66. As Sheriff, Defendant Weatherford is aware or reasonably presumed to be

aware of all law enforcement actions taken by his deputies resulting in

citations for alleged violations of state law that are or will be pressed forward

and presented to the County prosecutor for prosecution. In failing to take any

remedial action despite the opportunity and authority to intervene,

Case 3:20-cv-00805   Document 1   Filed 09/18/20   Page 29 of 44 PageID #: 29

Defendant Weatherford expressly or tacitly ratified, approved, and/or supported the enforcement actions of the subordinate officers and expressly or tacitly ratified, approved, and/or supported the pressing forward of the charge and presenting it to the County prosecutor for prosecution.

67. Additionally, it is evident that the subordinate law enforcement officers pursued the citation against Plaintiff with a united front: Defendant Sanford initiated the traffic stop, detained Plaintiff Ennis, and issued him the citation, all with the backing and support of Defendant Mahaney who was his training officer at the time; when Plaintiff Ennis took his concerns up the chain of command, Defendant Downs not only supported these actions, but doubled-down on the enforcement effort, claiming it was righteous and lawful because "some may find [the message] offensive," including himself since he would not want his children to be exposed to it on the public roads.

68. Further, Defendant Edison, being fully aware of Defendant Downs's illegitimate justification for pursuing the citation, refused to question the validity of these enforcement actions, essentially standing in complete solidarity with the other officers by deferring entirely to their judgments. He also actually expressed a personal interest in seeing the charge press forward into court where it would "be interesting" to him to see "what transpire[d]" with it. Such unity in thought, purpose, and action regarding the targeting of Plaintiff Ennis's speech exposes the existence of a policy, custom, or practice within the SCSO of targeting speech of this nature as "obscene" or "offensive"

30

for purposes of attempting to unconstitutionally ban it from the public roadways, which represents a moving force behind the enforcement actions of concern.

69. Even if the moving force behind these enforcement actions did not arise from a formally established policy, custom, or practice within the SCSO, the united front with which the enforcement efforts were pursued at least evinces the existence of a widespread and well-settled informal policy, custom, or practice within the SCSO of such an unconstitutional nature. It further reveals that Defendant Weatherford was aware of and actively promoted this policy, custom, or practice, or at least acted with deliberate indifference towards it, and, in either event, has expressly or tacitly permitted, facilitated, or propagated the resulting constitutional violations.

70. The existence of such a formal or informal policy, custom, or practice, of which Defendant Weatherford was aware and actively promoted or to which he was deliberately indifference, and which was a moving force behind the enforcement actions against Plaintiff Ennis, is further bolstered by the SCSO's prior enforcement actions under the same statute, which include at least two other instances in the last six years where Sumner County residents were targeted for displaying allegedly "obscene" stickers based on bumper stickers with sexually-neutral messages containing the word "Fuck." Defendant Weatherford is accordingly responsible and liable for the constitutional injuries that are the subject of this action.

31

71. As the County Executive, County Mayor, and chief executive officer of Sumner County ultimately responsible for exercising general supervision of all business within the County government, including that of the SCSO, Defendant Holt is responsible for the general oversight and management of the affairs of the SCSO maintained by Defendant Weatherford, which affairs include establishing and implementing the policies, customs, and practices concerning appointment, training, supervision, discipline, and retention of the SCSO personnel, as well as the law enforcement activities of the SCSO peace officers acting under a delegation of authority to carry out of the policies, customs, and practices Defendant Weatherford establishes and implements. As such, Defendant Holt is aware or reasonably presumed to be aware of all such policies, customs, and practices, formal or informal, which are moving forces behind the enforcement actions against Plaintiff Ennis and others who have been targeted for similar speech, and he had the opportunity and authority to intervene and prevent the constitutional violations.

72. Defendant Holt's failure to take any remedial action demonstrates express or tacit approval, ratification, or support of these unconstitutional policies, customs, and practices. At the least, it represents a deliberate indifference towards the same which, in either event, expressly or tacitly permitted, facilitated, or propagated the resulting constitutional violations.

73. As the governmental entity established under the laws of the State of Tennessee for purposes of generally managing all business of the County

32

through its elected county officials, who include Defendants Holt and Weatherford, Defendant County is responsible for the oversight and management of the affairs conducted by Defendants Holt and Weatherford and the SCSO maintained by Defendant Weatherford, which affairs include establishing and implementing the policies, customs, and practices concerning appointment, training, supervision, discipline, and retention of the SCSO personnel, as well as the law enforcement activities of the SCSO peace officers acting under a delegation of authority to carry out of the policies, customs, and practices Defendant Weatherford establishes and implements and which Defendant Holt is responsible for overseeing and managing. As such, the County is aware or reasonably presumed to be aware of all such policies, customs, and practices, formal or informal, which are moving forces behind the enforcement actions against Plaintiff Ennis and others who have been targeted for similar speech, and it had the opportunity and authority to intervene and prevent the constitutional violations.

74. The County's failure to take any remedial action demonstrates express or tacit approval, ratification, or support of these unconstitutional policies, customs, and practices. At the least, it represents a deliberate indifference towards the same which, in either event, expressly or tacitly permitted, facilitated, or propagated the resulting constitutional violations.

75. Defendants' law enforcement actions against Plaintiff Ennis under T.C.A. §§ 55-8-197 and § 39-17-901 targeting his constitutionally protected political

speech on gun control demonstrates that Defendants practices, policies, and customs have not only already injured Plaintiff Ennis's constitutional rights, but continue to expose him and all similarly situated Tennessee citizens to a credible threat of similar law enforcement actions, including unreasonable searches, seizures, detentions, arrests, and/or criminal charges, in response to the display on or in their motor vehicles of protected speech when it includes words or terms that Defendants may find merely offensive, vulgar, or otherwise distasteful.

76. As a direct and proximate result of Defendants' conduct, Plaintiff Ennis and the class of similarly situated individuals he represents in this action have suffered and will otherwise continue to suffer irreparable harm, including the loss of their constitutional rights to remain free of unreasonable search and seizure and the chilling of their free speech, entitling them to the declaratory and injunctive relief and damages they seek in this action as necessary to remedy such harm.

**COUNT II: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**FREE SPEECH RIGHTS VIOLATIONS**
**(U.S. CONST., FIRST & FOURTEENTH AMENDS.;**
**TENN. CONST., ART. 1, §19)**

77. Plaintiffs hereby incorporate by reference the allegations set forth above as though fully set forth herein.

78. For the same essential reasons that Defendants' policies, customs, and practices led to the violation of Plaintiff Ennis's fundamental constitutional

rights to remain free of unreasonable search and seizure as set forth above and incorporated as though fully set forth herein, those policies, customs, and practices violated Plaintiff Ennis's fundamental constitutional free speech rights under clearly established law because there was no objectively reasonable basis for targeting—much less suppressing through their enforcement actions—his speech as "obscene" or "offensive." Again, Plaintiff Ennis's message was classically protected political speech and all the Defendants are responsible and liable for the constitutional injuries for the same essential reasons they are responsible and liable for the violations of Plaintiff Ennis's rights to remain free from unreasonable search and seizure, as set forth above and incorporated as though fully set forth herein.

79. Additionally, Defendants' conduct in targeting this protected speech for suppression gives rise to an actionable claim of unlawful retaliation. "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy*, 635 F.3d at 217-18. This is also an objective standard. Thus, the plaintiffs "need not show they were actually deterred from exercising their right to free speech, but rather must show the actions were 'capable of deterring a person of ordinary firmness from

35

exercising his or her right[s].'" *Center for Bio-Ethical Reform*, 477 F.3d at 822 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999)).

80. Like the other general principles of controlling law discussed above, the law of retaliation was clearly established long before the enforcement actions at issue such that Defendants had "fair and clear warning" of it. *Kennedy*, 635 F.3d at 214. As the Sixth Circuit "stated unequivocally" back in 1999, "'Supreme Court decisions rendered long before the actions at issue in th[is] case that government actions may not retaliate against an individual for the exercise of protected First Amendment freedoms.'" *Center for Bio-Ethical Reform*, 477 F.3d at 824 (quoting *Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir.1999)); *see also Kennedy*, 635 F.3d at 219 ("it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983").

81. First, Plaintiff Ennis unquestionably engaged in protected conduct through the peaceable display of the political statement about gun control on his truck, for all the reasons stated above and incorporated herein. Second, multiple adverse actions were taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct: he was surveilled at a public gas station; subjected to a traffic stop as soon as he attempted to drive away; detained while being accused of displaying an unlawfully "obscene" and "offensive" message; and issued a formal citation for allegedly violating the state's obscenity law, which Defendants then pressed

forward for prosecution by doubling-down on the accusation in the face of Plaintiff Ennis's repeated complaints about being illegally targeted.

82. Third, these adverse actions were "motivated *at least in part* by the plaintiff's protected conduct." *Kennedy*, 635 F.3d at 217-18 (italics added). The protected conduct was at the heart of all the adverse actions taken against Plaintiff Ennis: he was stopped specifically because of his political statement about gun control contained in the window sticker; he was detained and accused of displaying an unlawfully "obscene" and "offensive" specifically because of that statement; he was issued a citation for violating the state's obscenity law based solely on the message of the sticker; and Defendants doubled-down on their pursuit of the criminal citation against him specifically because, in their judgment, the message was "obscene" or "offensive," even though they lacked any objectively reasonable basis for targeting the speech under the clearly established law of free speech rights. Again, the very statute on which Defendants based the criminal citation against Plaintiff Ennis on its face clearly had no application to the speech they targeted, since it did not involve anything *sexual* in nature—much less anything appealing to *prurient* sexual interests, as it must have to trigger any application of T.C.A. § 55-8-187. Thus, Defendants pursued these adverse actions against Plaintiff Ennis not only in direct contravention of the clearly established constitutional law but also in direct conflict with the state's own obscenity laws which do not even reach such speech. Doing so, particularly

37

through the united front they displayed in pressing the citation, reveals a specific animus towards Plaintiff Ennis's protected speech.

83. Indeed, Defendant Downs, the supervisor of Defendant Sanford, rebuffed Plaintiff Ennis's challenges through the chain of command by telling him "some may find that [speech] offensive," and Defendant Downs made clear he was one of those people whose sensibilities would be offended because he would not want his children "to see something like that." Defendant Edison, the supervisor of Defendant Downs, was specifically advised of Defendant Downs's statements purportedly justifying the citation. Yet, Defendant Edison did nothing to intervene or alter the course of action with the charge, despite his authority to do so and being on clear notice that the citation had no reasonable basis under the well-settled law. Instead, when Plaintiff Ennis brought the complaint up the chain of command, Defendant Edison tacitly agreed with and approved the actions and statements of the other officers in refusing to question them. And then, he expressed his own personal interest in having the charge press forward into court to see how a prosecution against Plaintiff Ennis would "transpire" before a judge. Such a united front around pushing this criminal citation into a prosecution smacks of an effort to use Plaintiff Ennis's speech as a means to somehow legitimize through the judicial process an unconstitutional policy, custom, or practice designed to target such protected speech for suppression.

38

84. In any event, it is clear that Defendants were motivated in their adverse actions against Plaintiff Ennis at least "in part *because of* [his] constitutionally protected speech," establishing a claim of retaliation. *Center for Bio-Ethical Reform*, 477 F.3d at 823 (italics added).

85. All the Defendant are responsible and liable for this constitutional injury for the same essential reasons they are responsible and liable for the injuries to Plaintiff Ennis's rights to remain free of unreasonable search and seizure, as set forth above and incorporated as though fully set forth herein.

86. And Defendants' law enforcement actions against Plaintiff Ennis under T.C.A. §§ 55-8-197 and § 39-17-901 targeting him for unconstitutional retaliation based on his protected political speech demonstrate that Defendants' practices, policies, and customs have not only already injured Plaintiff Ennis's constitutional rights, but continue to expose him and all similarly situated Tennessee citizens to a credible threat of similar law enforcement actions, including unconstitutional and retaliatory actions designed to unlawfully suppress protected speech when it includes words or terms that Defendants find merely offensive, vulgar, or otherwise distasteful. These adverse actions taken against Plaintiff Ennis, and the other individuals cited for violating the state obscenity laws based on bumper stickers containing the word "fuck," have directly targeted constitutionally protected speech being lawfully exercised in areas open and visible to the public within the jurisdiction of Defendants' law enforcement agency. Thus,

39

Plaintiff Ennis, all members and supporters of FPC and FPF, and all other similarly situated law-abiding citizens of Tennessee, including those seeking to peaceably advance the "pro-gun" side of the gun control debate, reasonably fear and realistically face similar dangers of unconstitutional law enforcement actions against them for similar displays on or in their motor vehicles of "vehement, caustic, and sometimes unpleasantly sharp" but nonetheless fully protected speech on matters of public importance.

87. As a direct and proximate result of Defendants' conduct, Plaintiff Ennis and the class of similarly situated individuals he represents in this action have suffered and will otherwise continue to suffer irreparable harm, including the loss of their constitutional rights and the chilling of their free speech, entitling them to the declaratory and injunctive relief and damages they seek in this action as necessary to remedy such harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

(a) Declaratory judgment that the policies, practices, and customs of Defendants at issue herein have violated and, unless and until judicially enjoined, pose a credible threat of continuing to violate the rights protected under the Fourth and Fourteenth Amendment to the United States Constitution, as well as the counterpart rights to remain free of unreasonable search and seizure under the Tennessee Constitution

40

Article 1, section 7, of Plaintiff Ennis, the members and supporters of Plaintiffs FPC and FPF, and all other similarly situated individuals who have engaged, are engaging, or seek to engage in forms of protected speech through the display on or in their motor vehicles of messages similar to message at issue here.

(b) Preliminary and permanent injunctive relief against Defendants, all officers, employees, agents of Defendants, all persons acting in cooperation with Defendants or under the supervision, direction, or control of Defendants, from, directly or indirectly, continuing to enforce, authorizing, or permitting the enforcement of, or elsewise propagating, whether under the ostensible authority of T.C.A. §55-8-187 or otherwise, the policies, customs, and practices of effecting unreasonable searches and seizures based on the targeting for suppressing of displays on or in motor vehicles of protected speech similar to the protected speech at issue here.

(c) Declaratory judgment that the policies, practices, and customs of Defendants at issue herein have violated and, unless and until judicially enjoined, pose a credible threat of continuing to violate the rights under the First and Fourteenth Amendment to the United States Constitution, as well as the counterpart rights to free speech under the Tennessee Constitution Article 1, section 19, of Plaintiff Ennis, the members and supporters of Plaintiffs FPC and FPF, and all other similarly situated individuals who have engaged, are engaging, or seek to engage in forms of

41

protected speech through the display on or in their motor vehicles of messages similar to message at issue here.

(d) Injunctive relief against each Defendant, all officers, employees, agents of each Defendant, all persons acting in cooperation with each Defendant or under the supervision, direction, or control of each Defendant, from, directly or indirectly, continuing to enforce, authorizing, or permitting the enforcement of, or elsewise propagating, whether under the ostensible authority of T.C.A. §55-8-187 or otherwise, the policies, customs, and practices of targeting for unconstitutional suppression displays on or in motor vehicles of protected speech similar to the protected speech at issue here.

(e) To that end, Plaintiffs request an order specifically declaring the vehicle window sticker that was the subject of Defendants' enforcement action against Plaintiff Ennis be deemed constitutionally protected free speech, and thereby enjoining Defendants from enforcing any such policies, practices, or customs against Plaintiff Ennis on the basis of this sticker and others like it, such that he may display it without further risk of law enforcement action or criminal prosecution.

(f) Consistent with his duty as Sheriff of Sumner County, Plaintiffs request an order instructing Defendant Weatherford to train his subordinate officers in the proper interpretation and enforcement of T.C.A. §55-8-187 as reasonably necessary to ensure that this law, and all related policies,

42

customs, and practices of the SCSO, are applied in a manner consistent with the rights to remain to free of unreasonable search and seizure and to engage in protected speech as guaranteed under the federal and state Constitutions.

(g) An award of nominal damages against Defendant for the past deprivation of Plaintiffs' constitutional rights as set forth in this Complaint pursuant to 42 U.S.C. § 1983.

(h) Compensatory damages, including, but not limited to, reasonable attorney's fees and costs incurred by Plaintiff FPC and FPF in defending Plaintiff Ennis against the criminal citation and resulting prosecution.

(i) An award of their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law.

(j) Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial.

Dated this 17th day of September, 2020

Respectfully Submitted,

*/s/ Michael P. Sousa*
Michael P. Sousa
Law Offices of Michael P. Sousa, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel.: 858-453-6122
Email: msousa@msousalaw.com
*Pro Hac Vice admission pending*

*/s/ Eugene Volokh*
Eugene Volokh
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
Tel.: 310-206-3926
Email: volokh@law.ucla.edu
*Pro Hac Vice admission pending*

43

*/s/ Lloyd R. Tatum*
Lloyd R. Tatum
BPR # 011326
Tatum & Tatum
Tatum Building
124 E. Main Street
P.O. Box 293
Henderson, TN 38340
Tel.: 731-989-3493
Email: Lloydtatum1@yahoo.com
*Local Co-Counsel*

*Attorneys for Plaintiffs*