**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| NICHOLAS ENNIS, FIREARMS POLICY COALITION, INC., and FIREARMS POLICY FOUNDATION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 3:20-cv-805** |
| | ) | |
| COUNTY OF SUMNER, TENNESSEE; ANTHONY HOLT in his official capacity as County Executive and County Mayor of Sumner County, TN; ROY "SONNY" WEATHERFORD in his official capacity as Sumner County Sheriff; CHRIS SANFORD in his individual and official capacities, KYLE MAHANEY in his individual and official capacities; JUSTIN DOWNS in his individual and official capacities; and CARL EDISON in his individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Chief Judge Waverly D. Crenshaw Mag. Judge Barbara D. Holmes** **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Come now Defendants Sumner County, Tennessee, Kyle Mahaney, Justin Downs, and Carl Edison[1] [2] (collectively, "Defendants"), by counsel, and in response to Plaintiffs' Motion for Summary Judgment (the "Motion"), state as follows:

---

[1] Defendants Anthony Holt and Roy "Sonny" Weatherford were dismissed from this action pursuant to Order entered July 13, 2021. (Doc. No. 32.) In that same order, the official-capacity claims against Defendants Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison were also dismissed. Remaining are the individual-capacity claims against Defendants Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison, as well as the claim against Defendant Sumner County.

[2] By Order entered November 15, 2021, Defendant Chris Sanford is no longer represented by the undersigned counsel. (Doc. No. 35.) This Response is filed on behalf of Defendants Sumner County, Tennessee, Kyle Mahaney, Justin Downs, and Carl Edison only.

1

Plaintiffs Nicholas Ennis ("Plaintiff Ennis"), Firearms Policy Coalition, Inc. ("FPC"), and Firearms Policy Foundation ("FPF") (collectively, "Plaintiffs") make several arguments in their Motion, which purports to resolve all issues in this matter in their favor.  In support of their First Amendment claim, they argue that Plaintiff Ennis's speech was protected, the Tennessee statute under which Plaintiff Ennis was cited does not apply to "political pejoratives," the constitutional rights allegedly violated by Defendants were clearly established, and Defendants' actions therefore constituted unlawful retaliation under the First Amendment.  Second, Plaintiffs argue that Defendants violated Plaintiff Ennis's Fourth Amendment rights.  Third, Plaintiffs argue that they are entitled to their requested declaratory and injunctive relief.  Finally, Plaintiffs assert that the organizational Plaintiffs (FPF and FPC) have standing to pursue these claims.

However, Plaintiffs cannot meet their burden of proof.  First, Plaintiffs cannot establish supervisory liability for any alleged constitutional violation – under either the First or Fourth Amendment – with respect to Defendants Downs and Edison.  Moreover, Plaintiffs cannot prove any direct violation of Plaintiff Ennis's First or Fourth Amendment rights.  Plaintiffs further cannot establish municipal liability for any alleged constitutional violation under either Amendment with respect to Defendant Sumner County.  Plaintiffs cannot establish that they are entitled to the requested equitable relief.  And finally, Plaintiffs FPC and FPF lack standing to bring any of the enumerated claims.

## I.    Plaintiffs Cannot Establish Section 1983 Supervisory Liability for Defendants Downs and Edison Under Either the First or Fourth Amendment.

"Each Defendant's liability must be assessed *individually based on his own actions*." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (emphasis added).  Plaintiffs must therefore plausibly allege unconstitutional conduct by *each* of the Sumner County Defendants.  With respect to Defendants Downs and Edison, Plaintiffs allege only that they, as supervisory officials within

2

the Sumner County Sheriff's Office, "had the opportunity and authority to intervene but took no remedial action" with respect to the issuance of the citation to Plaintiff Ennis. (Doc. 1, ¶ 64.) Specifically, Plaintiff Ennis notes that he complained about the citation to Defendant Downs, who then referred him to Defendant Edison (Defendant Downs' supervisor), "for purposes of moving the complaint up through the chain of command." (Doc. 36-1, p. 5.) Defendant Edison "noted Plaintiff's complaint but allowed the citation to stand," further stating that there was nothing he could do about it and the process would have to play out in court. (Id.)

## A. Supervisory Liability, Generally.

"[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). As argued below in Sections II and III, no underlying constitutional violation occurred, and therefore Plaintiffs cannot make a claim of supervisory liability. However, even if there were an underlying violation, Plaintiffs cannot demonstrate supervisory liability for any Defendant.

"Supervisory liability under § 1983 cannot attach where the allegation of liability is based on a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Rather, the supervisor must have actively engaged in unconstitutional behavior. *Id.* Liability must be based upon more than a mere right to control employees or simple negligence. *Id.* In the context of both the alleged First and Fourth Amendment violations, therefore, Plaintiffs must establish that Defendants Downs and Edison "did more than play a passive role in the alleged violations or show mere tacit approval of the goings on," *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (citing *Bass*, 167 F.3d at 1048), and "must be based on *active unconstitutional behavior*." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (emphasis added).

854751.1/020200106

"Even demonstrating that a supervisory official was aware of misconduct and failed to take action 'is insufficient to impose liability on supervisory personnel under § 1983.'" *Humphrey v. Friar*, No. 2:17-cv-02741, 2018 U.S. Dist. LEXIS 239804, at *58-59 (W.D. Tenn. Sep. 28, 2018) (quoting *Shehee*, 199 F.3d at 300) (denial of administrative grievances and failure to remedy alleged retaliatory behavior is insufficient where there is no allegation of *direct* participation, encouragement, authorization, or acquiescence in the constitutional violation); *see also, e.g., Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988) (mere claim that defendants were aware of alleged harassment but did not take appropriate action is insufficient to impose supervisory liability); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (affirming directed verdict on supervisory liability claim because plaintiff "made no showing that any of the supervisory officials . . . actively participated in or authorized any harassment" and the evidence, "at best, indicates that some instances of alleged harassment were brought to the attention of prison supervisory officials.").

### B. Plaintiffs Cannot Establish That Any Supervisor Directly Participated in the Alleged Violations.

Here, there is no proof in the record nor any allegations that Defendants Downs and Edison had any knowledge of their subordinates' actions until after the incident occurred. Rather, Plaintiffs argue that Defendants Downs' and Edison's liability rests on their "mere failure to act" on Plaintiff Ennis's complaints after the fact. However, the Sixth Circuit has held that a claim of supervisory liability is not supported where the supervisor "had no knowledge of his subordinates' actions until after the alleged violation occurred." *Hill v. City of Southfield*, No. 98-1896, 2000 U.S. App. LEXIS 5846, at *8 (6th Cir. Mar. 24, 2000) (citing *Bellamy*, 729 F.2d at 421).

Moreover, Defendants Downs and Edison cannot be liable because they had no authority to revoke the citation once it was issued by Defendant Sanford. (*See* Edison's Resp. to Ennis's Req. for Admission Nos. 17, 18; Downs' Resp. to Ennis's Req. for Admission Nos. 16-18.)

854751.1/020200106

Although Plaintiff Ennis complained to Defendants Downs and Edison after the ticket was issued, by that point the decision to prosecute was in the hands of the District Attorney General. (Id.) Accordingly, because Plaintiffs cannot establish that Defendants Downs and Edison took any *direct* role in the alleged constitutional violations, and because they lacked the obligation or authority to "remedy" the situation, Plaintiffs have not met the burden of proof with respect to their supervisory liability claims.

## II.    <u>Plaintiffs Cannot Establish a Claim for a Violation of the Fourth Amendment</u>.

Plaintiffs assert that Defendants Mahaney and Sanford lacked reasonable suspicion to conduct a traffic stop of Plaintiff Ennis on the basis of the sticker on his truck, or to issue him a citation pursuant to Tenn. Code Ann. § 55-8-187, and therefore violated his rights under the Fourth Amendment. (Doc. 1, ¶ 58; Doc. 36-1, p. 17.) However, Plaintiffs cannot establish a claim for direct violation of the Fourth Amendment.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "An ordinary traffic stop by a police officer is a 'seizure' within in the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). However, "to justify this type of seizure, officers need only 'reasonable suspicion' – that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Prado Navarette v. California*, 572 U.S. 393, 396 (2014)).

### A.    **Plaintiff Ennis's Fourth Amendment Rights Were Not Violated.**

Although the officers may have been mistaken as to the scope and applicability of Tenn. Code Ann. § 55-8-187, their reasonable suspicion to stop Plaintiff Ennis and issue him a citation

854751.1/020200106

was based upon a reasonable mistake, and thus Plaintiff Ennis's Fourth Amendment rights were not violated.

### 1. Even if officers' interpretation of Tenn. Code Ann. § 55-8-187 was incorrect, it was reasonable, because the statute is ambiguous.

Tenn. Code Ann. § 55-8-187 is titled, "Obscene or patently offensive bumper stickers, window signs, or other markings prohibited." Under Tenn. Code Ann. § 55-8-187, "the display of obscene and patently offensive . . . bumper stickers . . . on or in a motor vehicle that [is] visible to other drivers is prohibited." The expressly stated purpose of this statute is "[t]o avoid distracting other drivers and thereby reduce the likelihood of accidents arising from lack of attention or concentration[.]" *Id.* Tenn. Code Ann. § 55-8-187 goes on to state: "'[o]bscene' or 'patently offensive' has the meaning specified in § 39-17-901."

Section 39-17-901 contains enumerated definitions as applicable to criminal offenses against public health, safety, and welfare. The Section states that the "following definitions apply in this part, unless the context requires otherwise[.]" *Id.* Subsection (10) states:

(10) "Obscene" means:

    (A) The average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

    (B) The average person applying contemporary community standards would find that the work depicts or describes, in a patently offensive way, sexual conduct; and

    (C) The work, taken as a whole, lacks serious literary, artistic, political, or scientific value[.]

Tenn. Code Ann. § 39-17-901(10). Next, subsection (11) states:

(11) "Patently offensive" means that which goes substantially beyond customary limits of candor in describing or representing such matters[.]

Tenn. Code Ann. § 39-17-901(11).

854751.1/020200106

Given its title, its stated purpose, and the format of the referenced definitions, Tenn. Code Ann. § 55-8-187 is ambiguous. The title of the statute reads: "Obscene *or* patently offensive bumper stickers . . . prohibited." Use of the disjunctive in this context implies that "obscene bumper stickers" and "patently offensive bumper stickers" are two separate types of bumper stickers, and that both are prohibited. The body of Tenn. Code Ann. § 55-8-187 reiterates this disjunction, stating that "'[o]bscene' or 'patently offensive' has the meaning specified in § 39-17-901." Further, it is entirely reasonable to interpret "the display of obscene and patently offensive . . . bumper stickers" as referring to both "obscene bumper stickers" and "patently offensive bumper stickers," rather than bumper stickers which are both "obscene and patently offensive."

The structure of Tenn. Code Ann. § 39-17-901 adds to the ambiguity. Although the term "patently offensive" is used within the definition of "obscene,"[3] it is listed as a separate numbered term, rather than nested within the definition of obscene. Read together with the title and text of Tenn. Code Ann. § 55-8-187, this further implies that "obscene" and "patently offensive" are separate concepts. This, too, is bolstered by the stated purpose of Tenn. Code Ann. § 55-8-187 – to avoid distracting other drivers and causing accidents. Not only "prurient" bumper stickers could cause distraction; indeed, so would messages including profanity or other messages which one would not expect to see in public. Use of the phrase "f**k gun control" could reasonably be interpreted to go "substantially beyond customary limits of candor"[4] of discussing opposition to gun control and therefore be considered patently offensive.

---

[3] Although the term "obscene" is defined in Tenn. Code Ann. § 39-17-901 as relating only to prurient interests, the lay definition of obscene includes "containing or being language regarded as taboo in polite usage." Merriam-Webster online dictionary, https://www.merriam-webster.com/dictionary/obscene, last visited December 17, 2021.

[4] Plaintiffs discuss use of the phrase "such matters" in the definition of "patently offensive." Tenn. Code Ann. § 39-17-901(11). They argue that "such" refers back to the second element of the obscenity definition. (Doc. No. 36-1, p. 11.) However, another reasonable reading, according to the plain text of the statute, is that "such matters" refers to matters discussed within customary limits of candor. Said differently, the definition could read: "Patently offensive

854751.1/020200106

## 2.    Because the officers' interpretation was reasonable, they did not violate Plaintiff Ennis's Fourth Amendment rights.

The Supreme Court has held that "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Heien*, 574 U.S. at 60. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 60-61 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Thus, the Fourth Amendment tolerates reasonable mistakes with respect to an officer's "quick decision" about the scope of the law. *Id.* at 66. When an officer reasonably misinterprets the meaning of state law, there is "no violation of the Fourth Amendment in the first place." *Id.* Under *Heien*, the Court "need not resolve the state law question, only whether the officer's interpretation was reasonable." *United States v. Vance*, 893 F.3d 763, 770 (10th Cir. 2018).

The officers reasonably believed that this profane message was patently offensive and, given its size, placement, and profane language, could be distracting to other drivers on the road. This is not a case where officers stopped a driver without any reasonable suspicion at all – that is, where officers are unable "to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.'" *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Rather, the officers reasonably – if wrongly – believed the sticker violated a State statute and that a citation could be issued for its display. Even if the officers' interpretation of the law ended up being incorrect, their belief was nevertheless reasonable and thus, no Fourth Amendment violation occurred.

---

gun control message means a message which goes substantially beyond customary limits of candor in describing or representing gun control messages."

854751.1/020200106

**B.      Even If the Court Finds a Fourth Amendment Violation Occurred, the Individual Defendants Are Nevertheless Entitled to Qualified Immunity.**

Further, if the Court determines that no reasonable suspicion existed and Plaintiff's Fourth Amendment rights were violated, the ambiguity in Tenn. Code Ann. § 55-8-187 nevertheless shows that the officers did not violate a clearly established right – i.e., the second prong of a qualified immunity analysis.

"While this inquiry is similar to the reasonable mistake-of-law test, it is not the same. The reasonable mistake-of-law 'inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation.'" *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 621 (6th Cir. 2021) (quoting *Heien*, 574 U.S. at 67). "The more forgiving question asks only whether, at the time of the officer's conduct, the law was 'sufficiently clear that *every* reasonable official would [understand] that what he is doing' violates the law – so clear that the invalidity of the officer's actions was 'beyond debate.'" *Id.* (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, the statute at issue was not so plainly unambiguous that "*every* reasonable official" would know that to issue a citation based on the facts and circumstances present was a constitutional violation. Rather, the officers reasonably believed that the sticker was offensive and could be a distraction to other drivers. Even if the officers' interpretation was incorrect, the text of the statute is not so clear as to render the invalidity of their actions "beyond debate." Accordingly, even if the traffic stop and the issuance of the citation constituted a Fourth Amendment violation, the officers are nevertheless entitled to qualified immunity.

**III.     Plaintiffs Cannot Establish a Claim for Retaliation Under the First Amendment.**

Plaintiffs assert that Plaintiff Ennis's speech – that is, the bumper sticker – was protected under the First Amendment, and that the actions taken by law enforcement (the traffic stop,

854751.1/020200106

detention, citation, and prosecution) constituted unlawful retaliation. Indeed, "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

In order to prove a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The second and third elements are ordinarily factual questions for a jury. *See Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) (adverse action); *Davignon v. Hodgson*, 524 F.3d 91, 101 (6th Cir. 2008) (causation). As an initial matter, therefore, the determination as to whether there is a causal connection between the alleged protected conduct and the alleged adverse action should be left to the jury to decide.

Moreover, in the context of retaliatory prosecution claims "plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Nieves*, 139 S. Ct. at 1723. This is because in retaliatory prosecution cases, "proving the link between the defendant's retaliatory animus and the plaintiff's injury . . . 'is usually more complex than it is in other retaliation cases.'" *Lozman v. City Riviera Beach*, 138 S. Ct. 1945, 1953 (2018) (quoting *Hartman*, 547 U.S. at 261); *see also Reichle v. Howards*, 566 U. S. 658, 668 (2012) (holding the same for retaliatory arrest cases). It follows that lack of reasonable suspicion must be proven as a threshold to a claim of a retaliatory traffic stop,

854751.1/020200106

and lack of probable cause must be proven as a prerequisite to establishing a claim of a retaliatory issuance of a traffic citation.

Thus, Plaintiffs cannot meet their burden of proof to establish such a claim, because the decision to stop Plaintiff Ennis was based on reasonable suspicion and the decision to issue him a citation was based on probable cause.

## A. Tenn. Code Ann. § 55-8-187 is Ambiguous, and the Officers' Interpretation Was Reasonable.

As argued above, given its title, its stated purpose, and the format of the referenced definitions, Tenn. Code Ann. § 55-8-187 is ambiguous. *See* Section II.A.1, *supra*. Defendant Sanford stopped Plaintiff Ennis and issued the citation based upon the reasonable premise that the bumper sticker was "patently offensive" and thus violated Tenn. Code Ann. § 55-8-187. Accordingly, the officers' interpretation – even if incorrect – was reasonable.

## B. Defendants Had Reasonable Suspicion to Stop Plaintiff Ennis and Probable Cause to Cite Him, Defeating Plaintiffs' Retaliation Claim.

"A showing of reasonable suspicion does not require an actual violation of the law because '*Terry* accepts the risk that officers may stop innocent people' to investigate further." *State v. Brotherton*, 323 S.W.3d 866, 871 (Tenn. 2010) (quoting *Illinois*, 528 U.S. 119, 126 (2000)). The question is whether the police officer had probable cause or reasonable suspicion that a traffic violation occurred and not whether the defendant would be found guilty in a court of law for the infraction. *Id*. (citing *United States v. Johnson*, 242 F.3d 707, 709-10 (6th Cir. 2001); *United States v. Fowler*, 402 F. Supp. 2d 1338, 1340-41 (D. Utah 2005)). "Thus, it is possible for a seizure to be legal even when the charge that forms the basis for the seizure is later dismissed." *State v. Foster*, No. E2011-00490-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 323, at *20 (Tenn. Crim. App. May 17, 2012). As discussed above, the officers had reasonable suspicion to believe a traffic

11

violation was ongoing and to therefore stop and detain Plaintiff Ennis. *See* Section II.A.2, *supra*. The existence of reasonable suspicion therefore defeats Plaintiffs' retaliation claim with respect to the stop and detention.

"The existence of probable cause 'will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.'" *Higginbotham v. Sylvester*, 741 Fed. Appx. 28, 31 (2d Cir. 2018) (quoting *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012)); *see Nieves*, 139 S. Ct. 1715, 1725 (2019) (confirming that "[a]bsent such a showing" of a lack of probable cause, "a retaliatory arrest claim fails"). "An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government." *Id.* (internal quotation marks omitted).

Like reasonable suspicion, probable cause may be based on a reasonable mistake of law or fact. *See, e.g., Saltmarshall v. Prime Healthcare Servs.-Garden City LLC*, 831 Fed. Appx. 764, 769 (6th Cir. 2020); *Heien*, 574 U.S. at 60; *Anderson v. Creighton*, 483 U.S. 635, 661 (1987) ("The concept of probable cause leaves room for mistakes, provided always that they are mistakes that could have been made by a reasonable officer."). As argued above, the officers issued the citation based upon the reasonable premise that the bumper sticker was "patently offensive" and thus Plaintiff Ennis was in violation of Tenn. Code Ann. § 55-8-187. Accordingly, the officers' interpretation – even if incorrect – was reasonable, and probable cause existed.[5] Absent a showing of a lack of probable cause, Plaintiffs' retaliation claim fails.

---

[5] Plaintiffs also refer to Defendants' alleged "personal interest in suppressing Ennis's speech." (Doc. 36-1, p. 16.) However, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*; *see also United*

**IV.** **Plaintiffs Cannot Establish Municipal Liability for Defendant Sumner County.**

**A.** *Monell* **Liability, Generally.**

It is well-settled that a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A municipality may only be liable for civil damages in a § 1983 action when the deprivation of a constitutionally protected right is caused by the execution of a governmental policy or custom. *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). A policy or custom may be established by demonstrating:

(1) the existence of an illegal official policy or legislative enactment;
(2) that an official with final decision making authority ratified illegal actions;
(3) the existence of a policy of inadequate training or supervision; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, Plaintiffs do not make clear the basis of their municipal liability claim under *Monell*. However, Plaintiffs appear to point to Defendant Sumner County's express or tacit ratification, approval, and support of the complained-of law enforcement actions, policies, practices, and customs. (Doc. 36-1, pp. 6-7.) Plaintiffs also point to Defendant Sumner County's responsibility for oversight and management of the Sheriff's Department, including training and supervision. (Id. at 6.) Whether under a theory of tolerance of constitutional violations, ratification of illegal actions, or policy of inadequate training or supervision,[6] Plaintiffs cannot meet their burden of proof to establish municipal liability.

---

*States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020) (when a "traffic stop is supported by probable cause, an officer's subjective intent is irrelevant."). Thus, Plaintiffs allegations about the subjective motivations of the officers are irrelevant in light of the existence of objective probable cause.

[6] Plaintiffs do not appear to allege the existence of an actual illegal official policy or legislative enactment.

854751.1/020200106

**B.     Plaintiffs Cannot Prove a Custom of Tolerance or Acquiescence of Civil Rights Violations.**

To establish a *Monell* claim and hold a municipality liable under a custom of tolerance theory – that is, a tacit approval of certain unconstitutional conduct – a plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
> (2) notice or constructive notice on the part of the [defendant];
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Claiborne County*, 103 F.3d at 508.  In order to prove their claim, Plaintiffs would have to show "a custom that is 'so widespread, permanent, and well settled as to have the force of law.'"  *Gale v. O'Donohue*, 751 Fed. Appx. 876, 880 (6th Cir. 2018) (quoting *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010)).  Moreover, "deliberate indifference" in this context is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citation omitted).  This standard requires "multiple earlier inadequate investigations" of "comparable claims."  *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020) (citation omitted).

In support of their arguments, Plaintiffs reference "at least two other people in Sumner County [who] have been cited . . . for displaying stickers with messages containing the word 'f*ck' . . . [in a way that did not] appeal to any prurient sexual interests or otherwise relate to any sexual conduct." (Doc. 36, p. 5.)  These two incidents are said to have occurred "within the last six years." (Id.)  However, the referenced incidents are insufficient to establish a persistent pattern of earlier violations to show the type of deliberate indifference necessary.  There is no proof in the record about whether or how these previous incidents were addressed by the instant Defendants, whether

any complaint was made, and the outcome. These completely unrelated incidents were separated by a period of years. Moreover, there is no evidence in the record that either of the other two incidents involved "political" speech (or even gun-related speech) as is the case alleged here.

The facts do not show a custom of permitting First Amendment violations that was "so widespread, permanent, and well settled as to have the force of law" or that such violations were "deeply embedded traditional ways of carrying out" County policy. *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004); s*ee also Stone v. City of Grand Junction*, 765 F. Supp. 2d 1060, 1073 (E.D. Tenn. 2011) (three incidents in two-month period of time not sufficient); *Boyd v. City of Warren*, No. 16-cv-12741, 2018 U.S. Dist. LEXIS 65085, 2018 WL 1835704, at *2 (E.D. Mich. Apr. 18, 2018) ("three does not a pattern make"); *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620-21 (E.D. Mo. Dec. 2019) ("two or three incidents, occurring nearly a year apart and two years before any of the events at issue in this case, do not constitute a continuing, widespread, persistent pattern." (quotation marks and citation omitted); *Billingsley v. Shelby County Dep't of Corr.*, No. 02 2920 B, 2004 U.S. Dist. LEXIS 25172, 2004 WL 2757915, at *4 (W.D. Tenn. Nov. 24, 2004) ("failure to act in two unrelated cases, even if true, does not reflect a custom of conscious indifference to unconstitutional conduct.").

Accordingly, the County cannot be liable for any "custom of inaction," as Plaintiffs have not shown "a clear and persistent pattern" of similar constitutional violations. *Garretson*, 407 F.3d at 796; *see also Claiborne County*, 103 F.3d at 508 (6th Cir. 1996).

### C. Plaintiffs Cannot Prove Section 1983 Liability Based on Ratification of Illegal Actions.

To establish § 1983 liability based on ratification, a plaintiff must "prove that the municipality has a pattern of inadequately investigating similar claims." *Stewart v. City of Memphis*, 788 Fed. Appx. 341, 344 (6th Cir. 2019) (citations omitted). To establish such a pattern,

854751.1/020200106

there must be "multiple earlier inadequate investigations and they must concern comparable claims." *Id.* at 344-45. Here, Plaintiffs have not shown that the County failed to investigate or otherwise act on multiple, comparable past incidents of constitutional violations.

On the other hand, "a plaintiff would not need to establish a pattern of past misconduct where the actor was a policymaker with final policymaking authority." *Burgess*, 735 F.3d at 479 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986)). Under this theory of *Monell* liability, "a plaintiff must demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question.'" *Id.* (quoting *Pembaur*, 475 U.S. at 483). Moreover, the course of action chosen or ratified by the policymaker "must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.* (citing *Pembaur*, 475 U.S. at 484-85).

Assuming Plaintiffs' position is that Sumner County Sheriff Sonny Weatherford and/or Sumner County Chief Executive Anthony Holt had final policymaking authority, Plaintiffs are unable to point to any evidence that the Sheriff or Mr. Holt made any deliberate choice which resulted in Plaintiffs' harm. *See Burgess*, 735 F.3d at 479 ("In the instant case, Fischer did not order the takedown, nor do Plaintiffs assert that a course of action selected by Fischer was the moving force behind Burgess' injury. Fischer's after-the-fact approval of the investigation, *which did not itself cause or continue a harm* against Burgess, was insufficient to establish the *Monell* claim.") (emphasis added). Accordingly, the County also cannot be liable under a ratification theory of *Monell* liability.

## D. Plaintiffs Cannot Establish a Policy of Inadequate Training or Supervision.

Finally, the "inadequacy of a training policy 'may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of a

16

person with whom the police come into contact.'" *Cretacci v. Hare*, No. 4:19-CV-55-SKL, 2021 U.S. Dist. LEXIS 10029, at *34-36 (E.D. Tenn. Jan. 20, 2021) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)) (footnote omitted).  The requisite "deliberate indifference" has been explained by the Supreme Court as follows:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390 (footnote omitted).  To succeed on a claim in the Sixth Circuit for failure to train or supervise, Plaintiff must prove "'prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was *clearly on notice* that the training in this particular area was deficient and likely to cause injury.'" *Wright v. City of Euclid*, 962 F.3d 852, 881 (6th Cir. 2020) (emphasis added) (quoting *Burgess*, 735 F.3d at 478).

As argued above, Plaintiffs fail to prove the required pattern of unconstitutional conduct. Further, Sumner County requires its officers to complete training in accordance with State standards.  Deputies are supervised by higher-ranking deputies who oversee and direct compliance with State standards and County policies.  Plaintiffs have provided no other evidence demonstrating that the training received by any deputy in this case was in any way inadequate, nor that any allegedly inadequate training or supervision caused the alleged constitutional violation. *See Cretacci*, 20121 U.S. Dist. LEXIS 10029, at *35-36.  Nor have Plaintiffs provided any evidence that Sumner County was on notice that its training was somehow deficient. *See Wright*, 962 F.3d at 881.  Therefore, Plaintiffs cannot meet their burden of proof under a training theory either, and Plaintiffs' municipal liability claim against Sumner County must fail.

17

## V.    **Plaintiffs Cannot Establish a Claim for Declaratory and Injunctive Relief**.

Plaintiffs argue generally in their Motion that they are entitled to the requested declaratory and injunctive relief because "Defendants clearly intend to continue unconstitutionally targeting all speech of this type." (Doc. 36-1, p. 18-19.) However, the relief requested by Plaintiffs is inappropriate because the retroactive relief requested is barred as a matter of law, and the prospective relief requested is insufficiently supported because it is based solely on a subjective and hypothetical fear of future prosecution.

### A.    **The Retroactive Equitable Relief Requested by Plaintiffs against the Individual Defendants in Their Official Capacity is Barred.**

Plaintiffs seek, in part, equitable relief based on the issuance of the citation at issue on September 25, 2019. (*See, e.g.,* Compl. at 40, (a) and (c) ("declaratory judgment that [Sumner County's policies] have violated" Plaintiffs' constitutional rights.) Any request which seeks retroactive equitable relief is barred, because the *Ex Parte Young* exception permitting suits against state officials in their official capacity "does not extend to any retroactive relief." *Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 U.S. Dist. LEXIS 25969, at *26 (M.D. Tenn. Feb. 26, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 338 (1979)). "Indeed, if a plaintiff's complaint against state officials is 'based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not come under the doctrine of *Ex Parte Young*.'" *Id.* (quoting *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)).

Therefore, to the extent Plaintiffs' requests for equitable relief seek solely retroactive relief based on a past act – that is, alleged constitutional violations caused by the citation issued on September 25, 2019, for Plaintiff Ennis's "f\*\*k gun control" window sticker – such claims are barred.

18

**B.    The Prospective Equitable Relief Requested by Plaintiffs is Barred Because It is Speculative and Hypothetical.**

Plaintiffs' Complaint also seeks prospective equitable relief based on a subjective fear of "further risk of law enforcement action or criminal prosecution." (Compl. at 42, (e); *see also* Pls.' Resp. at 7.) To seek declaratory (or injunctive) relief, a plaintiff must "show that he is subject to 'actual present harm or a significant possibility of future harm.'" *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) (quoting *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). A "subjective fear" about a possible future adverse action is insufficient to state a "case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). Similarly, with respect to claims for injunctive relief under 42 U.S.C. § 1983 for an alleged deprivation of a federally protected right, the Supreme Court has held that "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any *real or immediate* threat that the plaintiff will be wronged again — a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added) (citation omitted); s*ee also Moncier v. Jones*, 939 F. Supp. 2d 854, 859 (M.D. Tenn. 2013).

No actual present harm or significant possibility of future harm exists here, and any concern about receiving another citation is purely hypothetical, conjectural, and subjective. Without a significant possibility of future harm or a likelihood of real and immediate irreparable injury, Plaintiffs' request for prospective equitable relief should be dismissed.

**VI.    Plaintiffs Cannot Establish Standing on Behalf of the Organizational Plaintiffs.**

Plaintiffs assert that Plaintiffs FPF and FPC (the "Organizational Plaintiffs") have standing to bring claims in a representative capacity. However, the Organizational Plaintiffs cannot establish standing as asserted because they have failed to demonstrate an injury in fact.

19

Standing is a threshold question in every federal case. *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016) (citing *Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010)). "Plaintiffs have standing if they suffer a 'concrete,' 'particularized,' and 'actual' or 'imminent' injury that is caused by a defendant's conduct and is likely to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An association or organization may assert standing in one of two ways: (1) on its own behalf because it has suffered a palpable injury as a result of the defendants' actions; or (2) as the representative of its members." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332-33 (6th Cir. 2002).

### A.    The Organizational Plaintiffs Have Waived Direct Organizational Standing.

The Organizational Plaintiffs state in the Motion that they are "relinquishing" their claims on behalf of themselves and only pursuing claim on behalf of their members. (Doc. 36-1, p. 20 fn. 3.) Therefore, summary judgment should be denied as to this portion of Plaintiffs' claims.

### B.    The Organizational Plaintiffs Cannot Establish Representative Standing.

According to Plaintiffs' Motion, the Organizational Plaintiffs only seek to pursue their claims on behalf of their members. "Even where an organizational plaintiff lacks standing to sue in its own right, it may sue on behalf of its members if 'its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 549 (6th Cir. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Where a plaintiff has not demonstrated an injury in fact, however, they cannot show either direct organizational standing or representative standing on behalf of their members. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 389 (6th Cir. 2020).

854751.1/020200106

To satisfy standing requirements, an injury in fact must be concrete, particularized, actual, and imminent, and not conjectural or hypothetical. *Friends of the Earth, Inc.*, 528 U.S. at 180. The "threatened injury must be '*certainly impending*' to constitute injury in fact, and '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs cannot assert representative standing based on a purported injury to Plaintiff Ennis and/or some speculative threat of future injury against their members where they themselves have not suffered an injury in fact. *See Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) ("even when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute.") (internal quotations omitted). As discussed above in Section VI, "subjective fear" about a possible future adverse action is insufficient to state a "case or controversy." *Preiser*, 422 U.S. at 403. *See also City of Los Angeles*, 461 U.S. at 111; s*ee also Moncier v. Jones*, 939 F. Supp. 2d 854, 859 (M.D. Tenn. 2013). "When the plaintiffs' allegations of future injury are based on past human errors, the plaintiffs face a high bar to demonstrate standing." *Hargett*, 978 F.3d at 386-87 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Neither Plaintiff Ennis nor the Organizational Plaintiffs can establish "actual present harm or a significant possibility of future harm." *Magaw*, 132 F.3d at 279. Plaintiffs must meet a "high bar" to demonstrate standing based only on past human error, as is the case alleged here. *Hargett*, 978 F.3d at 386-87. Plaintiffs are unable to demonstrate the required "continuing, present adverse effects" to establish injury in fact. *O'Shea*, 414 U.S. at 495-96. Rather, they base their arguments

on an unsupported, speculative, and theoretical fear of future prosecution of their members. Accordingly, the Organizational Plaintiffs lack standing to bring their claims.

## VII.   Conclusion.

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment against them.

Respectfully submitted:

*/s/ Sarah L. Locker*
Leah May Dennen, #12711
Sumner County Law Director
Benjamin C. Allen, #35923
355 North Belvedere Drive, Room 303
Gallatin, TN  37066
615-451-6060
LeahMay@sumnercountytn.gov
Ben@sumnercountytn.gov

Thomas B. Russell, #26011
Sarah L. Locker, #31994
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN  37201
615-244-4994
trussell@gsrm.com; slocker@gsrm.com

*Attorneys for Defendants*

854751.1/020200106

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Eugene Volokh
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
volokh@law.ucla.edu

*Attorney for Plaintiffs*

Michael Sousa
3232 Governor Drive, Suite A
San Diego, CA 92122
msousa@msousalaw.com

*Attorney for Plaintiffs*

Lloyd R. Tatum
Tatum & Tatum
P O Box 293
124 E Main Street
Henderson, TN 38340
lloydtatum1@yahoo.com

*Attorneys for Plaintiffs*

Raymond DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
law.rmd@gmail.com

*Attorneys for Plaintiffs*

*/s/ Sarah L. Locker* _____

23