**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| NICHOLAS ENNIS, FIREARMS POLICY COALITION, INC., and FIREARMS POLICY FOUNDATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:20-cv-805 |
| COUNTY OF SUMNER, TENNESSEE; CHRIS SANFORD, KYLE MAHANEY, JUSTIN DOWNS, and CARL EDISON in their individual capacities, | ) ) ) ) | Chief Judge Waverly D. Crenshaw Mag. Judge Barbara D. Holmes JURY DEMAND |
| Defendants. | ) ) | |

## DEFENDANTS SUMNER COUNTY, KYLE MAHANEY, JUSTIN DOWNS AND CARL EDISON'S RESPONSES TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Come now Defendants Sumner County, Tennessee, Kyle Mahaney, Justin Downs, and Carl Edison (collectively "Defendants"), by counsel, and for their responses to Plaintiff's Statement of Material Facts, state as follows:

**1.** On the afternoon of September 25, 2019, Ennis stopped at a gas station in Sumner County, Tennessee to refuel his truck.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 24
b. Defendants' Answer to Complaint ¶ 24 (Dkt. No. 16): "Admitted that Plaintiff Ennis was at a gas station in Sumner County, Tennessee at approximately 5:04 p.m. on September 25, 2019."

*Response*: **Undisputed.**

**2.** Displayed on a side window of Ennis's truck was a sticker with an image of two firearms flanking the letters "U" and "C," above the words "gun control" which, viewed collectively, conveyed the message "Fuck Gun Control."

1

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 23; Exhibit A to Complaint.
b. Defendants' Answer to Complaint ¶ 23 (Dkt. No. 16): "The referenced exhibit speaks for itself."
c. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims for Failure to State a Claim (Dkt. No. 22) at 1 ("On September 25, 2019, Defendants Sanford and Mahaney observed Plaintiff Nicholas Ennis ('Plaintiff Ennis') vehicle which displayed a large window sticker that read, 'Fuck Gun Control.'")
d. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case (acknowledging the specific nature of the image on the sticker)

*Response:* **Undisputed.**

**3.** While Ennis was refueling his truck, Sumner County Sheriff Deputies Chris Sanford and Kyle Mahaney of the Sumner County Sheriff's Office ("SCSO") surveilled him from inside their patrol car parked nearby.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 25
b. Response of Defendant Mahaney to Interrogatory No. 5, propounded by Plaintiff Ennis (describing the events leading up to the traffic stop)
c. Dashcam video and audio of incident produced by Defendants (submitted via flash drive to the Court)

*Response*: **Disputed that the term "surveilled" is an accurate characterization of Defendants Sanford and Mahaney's actions prior to pulling Plaintiff Ennis over. (*See* Defendant Mahaney's Response to Interrogatory No. 5.) The remainder of this statement is undisputed for purposes of summary judgment.**

**4.** After Ennis was done refueling, he started to drive away, but Sanford immediately got behind him in the SCSO patrol car and activated the car's lights, causing him to stop before exiting the station.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶¶ 3, 28, 67
b. Defendants' Answer to Complaint ¶ 3 (Dkt. No. 16): "Defendants admit that Plaintiff Ennis was leaving a gas station when he was issued a citation for a violation of Tenn. Code Ann. § 55-8-187"

2

c. Defendants' Answer to Complaint ¶ 28 (Dkt. No. 16): "Paragraph 28 is admitted to the extent that Plaintiff Ennis was pulled over by Deputy Sanford in his SCSO patrol car, which had its lights activated."

d. Defendants' Answer to Complaint ¶ 67 (Dkt. No. 16): Admitting Paragraph 67 "to the extent that it describes the traffic stop am citation received by Plaintiff Ennis."

e. Dashcam video and audio of incident produced by Defendants (submitted via flash drive to the Court)

f. Responses of Defendants Sanford and Mahaney to Request for Admission Nos. 12 and 15 (admitting that they subjected Plaintiff Ennis to this traffic stop at the gas station)

*Response*: **Undisputed.**

**5.** The truck had no visible signs of safety issues, damage, or registration violations, and Ennis had not committed any moving violations warranting a traffic stop; instead, the window sticker was the sole reason for the stop. SOMF ¶ __.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 27

b. Defendants' Answer to Complaint ¶ 27 (Dkt. No. 16): "Paragraph 27 is admitted to the extent that Plaintiff Ennis was not pulled over or cited for any moving violations."

c. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case (stating Plaintiff was pulled over based on this sticker)

d. Responses of Defendants Sanford and Mahaney to Request for Admission Nos. 13 and 14, propounded by Ennis (admitting that the sticker was the sole basis for the stop).

*Response:* **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. Further disputed to the extent a distracting window sign is a safety issue under Tenn. Code Ann. § 55-8-187. Further disputed that Plaintiff Ennis had not committed a violation warranting a stop. Undisputed for purposes of summary judgment that the window sticker was the justification for the traffic stop.**

**6.** Sanford approached Ennis's driver-side window and said Ennis was stopped because the message on the window sticker violated a state law regulating "obscene and offensive" speech.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 29

b. Dashcam video and audio of incident produced by Defendants (on flash drive)

c. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims for Failure to State a Claim (Dkt No. 22) at 2 ("the deputies approached Plaintiff Ennis' vehicle and discussed his obscene window sticker")

3

d. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case ("Deputy Sanford explained to Plaintiff he was pulled over for his offensive window sticker, which violated state law against obscene window stickers.")

e. Response of Defendant Mahaney to Interrogatory No. 5, propounded by Plaintiff Ennis (describing the events leading up to the traffic stop)

*Response:* **Undisputed.**

7. Ennis objected that the sticker's message was constitutionally protected free speech under the First Amendment.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 29
b. Dashcam video and audio of incident produced by Defendants (on flash drive)

*Response*: **Undisputed.**

8. When Sanford nevertheless continued to assert that the content of the message violated state law, Ennis asked to speak to Sanford's supervisor.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 29
b. Dashcam video and audio of incident produced by Defendants (on flash drive)

*Response*: **Undisputed.**

9. Mahaney, who was Sanford's supervisor at the time, then joined Sanford at the driver's side window, but they continued to assert that the message was unlawful despite Ennis's continued objections that it was protected free speech under the First Amendment.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶¶ 30, 31
b. Defendants' Answer to Complaint ¶¶ 30, 31 (Dkt. No. 16): admitting the allegations in Paragraphs 30 and 31
c. Dashcam video and audio of incident produced by Defendants (on flash drive)
d. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case ("believing his rights to free speech were violated, Plaintiff requested to speak to Deputy Sanford's supervisor")

4

e. Response of Defendant Mahaney to Interrogatory No. 9, propounded by Plaintiff Ennis (admitting that Plaintiff Ennis complained to him and Defendant Mahaney that he believed the issuance of the citation violated his First Amendment rights)

*Response*: **Undisputed.**

10. Sanford indeed issued Ennis a formal citation for purportedly violating T.C.A. § 55-8-187, which prohibits "the display of obscene and patently offensive . . . bumper stickers, window signs or other markings on or in a motor vehicle that are visible to other drivers," with the written basis of the citation being that Sanford "did observe said vehicle with window sticker depicting 'FUCK Gun Control'" which Sanford described as an "Obscene Sticker."

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 32
b. Defendants' Answer to Complaint ¶ 32 (Dkt. No. 16): admitting that "Defendant Sanford issued the citation to Plaintiff Ennis as described."
c. Dashcam video and audio of incident produced by Defendants (on flash drive)
d. Responses of Defendants Sanford and Mahaney to Request for Admission Nos. 16 and 17, propounded by Plaintiff Ennis (admitting that they issued the citation to Plaintiff Ennis on this basis)
e. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims for Failure to State a Claim (Dkt. No. 22) at 2 ("Citing Tenn. Code Ann. § 55-8-187, Defendants Sanford and Mahaney issued Plaintiff Ennis a citation and gave him a court date.")

*Response*: **Undisputed.**

11. Mahaney remained present and actively involved on the scene as Sanford prepared and issued the citation for the alleged violation of T.C.A. § 55-8-187 based on this speech about gun control, indicating he supported the action.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 36
b. Defendants' Answer to Complaint ¶ 36 (Dkt. No. 16): admitting the factual allegations in Paragraph 36
c. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case ("Pursuant to Tenn. Code Ann. § 55-8-187, the deputies issued Plaintiff a citation.")
d. Dashcam video and audio of incident produced by Defendants (on flash drive)

*Response*:  **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.  The remainder of this statement is undisputed for purposes of summary judgment.**

12.     Mahaney has since expressly stated that he agreed with Sanford's decision to initiate the stop and issue the citation.

> *Record Citations*
>
> a.  Response of Defendant Mahaney to Interrogatory No. 9, propounded by Plaintiff Ennis ("I agreed the sticker gave us probable cause to pull Plaintiff Ennis over in the Mapco parking lot. … I agreed with the issuance of the citation.")
>
> *Response*:  **Undisputed.**

13.     And both Mahaney and Sanford now say their "actions upheld the Constitution of the United States."

> *Record Citations*
>
> a.  Response of Defendant Sanford to Request for Admission No. 24, propounded by Plaintiff Ennis ("My actions upheld the Constitution of the United States.")
> b.  Response of Defendant Mahaney to Request for Admission No. 24, propounded by Plaintiff Ennis ("My actions upheld the Constitution of the United States.")
>
> *Response*:  **Undisputed.**

14.     When Ennis continued to contest the legality of the enforcement actions taken against him for the display of the gun control message during the traffic stop, Mahaney referred him to Lieutenant Justin Downs and another senior SCSO officer, indicating that Ennis must contact them with any further complaint.

> *Record Citations*
>
> a.  Complaint (Dkt. No. 1) ¶ 37
> b.  Defendants' Answer to Complaint ¶ 37 (Dkt. No. 16): admitting the factual allegations in Paragraph 37
>
> *Response*:  **Undisputed.**

857833.1/020200106

15.     The actions of Sanford and Mahaney were consistent with training, instruction, and guidance they had received from the SCSO under Sheriff Weatherford regarding the SCSO's law enforcement policies, practices, and customs.

*Record Citations*

a.  Defendants' Answer to Complaint ¶¶ 15, 16, 17, 18 (Dkt. No. 16): Admitting that Defendants Sanford, Mahaney, Downs, and Edison were "at all times relevant to this Complaint" law enforcement officers "acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of [Sheriff] Weatherford, and under a delegation of authority from [Sheriff] Weatherford to carry out the actions, policies, customs, and practices at issue herein."

b.  Defendants' Answer to Complaint ¶ 65 (Dkt. No. 16): Admitting Sheriff Weatherford's exercise of authority over criminal investigations, searches, seizures, traffic citations, and training and supervision of SCSO deputies, including Defendants Sanford, Mahaney, Downs, and Edison, as well as the development of SCSO policies concerning all the same)

c.  Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 1 ("For all times relevant Chris Sanford ('Defendant Sanford') and Kyle Mahaney ('Defendant Mahaney') were deputies employed by the Sumner County Sheriff's Office."); *id.* at 2 ("After receiving the citation, Plaintiff Ennis spoke with Sumner County Sheriff's Office employees Justin Downs ('Defendant Downs') and Carl Edison ('Defendant Edison') regarding the citation.")

d.  Admissions of Sheriff Weatherford in response to Request for Admission Nos. 10, 11, 12, 13, 15, 16, and 20, propounded by Plaintiff Ennis (admitting exercise of authority over and responsibility for criminal investigations, searches, seizures, traffic citations, training and supervision SCSO deputies, and development of SCSCO policies concerning all the same)

e.  Responses of Defendant Sanford to Request for Admission Nos. 18, 19, 23, propounded by Plaintiff Ennis (admitting he has received training from the SCSO on the application of Tennessee laws)

f.  Responses of Defendant Mahaney to Request for Admission Nos. 18, 19, and 23, propounded by Plaintiff Ennis (same)

g.  Responses of Defendant Downs to Request for Admission Nos. 19, 20, and 21 propounded by Plaintiff Ennis (same)

h.  Response of Defendant Edison to Request for Admission Nos. 19, 20, and 21, propounded by Plaintiff Ennis (same)

i. Response of Defendant Edison to Request for Admission No. 8, propounded by Plaintiff Ennis (admitting SCSO training on "First Amendment Auditors")

*Response*: **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist. The remainder of this statement is undisputed for purposes of summary judgment.**

16. Later the same day, Ennis telephoned the SCSO, requesting to speak to Sanford's supervisor about challenging the citation, and he was referred to Downs, who had seniority over both Sanford and Mahaney.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 38
b. Defendants' Answer to Complaint ¶ 38 (Dkt. No. 16): admitting Plaintiff Ennis contacted the SCSO
c. Response of Defendant Downs to Request for Admission No. 11, propounded by Plaintiff Ennis (admitting senior status over Defendants Sanford and Mahaney)

*Response*: **Undisputed.**

17. In discussing the illustration of the word "Fuck" through the graphics of the AR-15 and AK-47 firearms on the sticker, Downs told Ennis, "some may find that offensive, which would fall under the statute" Ennis was cited for violating, and he (Downs) "wouldn't want [his] 10 and 12 [year-old children] to see something like that."

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 39
b. Exhibit B to Complaint, Email correspondence on September 28, 2019, containing these statements
c. Responses of Defendant Downs to Requests for Admission Nos. 10, 13, 14, and 15, propounded by Plaintiff Ennis (acknowledging that he wrote these statements in the email correspondence comprising Exhibit B)
d. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims for Failure to State a Claim (Dkt. No. 22) at 2 (admitting Plaintiff Ennis spoke with Defendants Downs and Edison regarding the citation).

*Response*: **Undisputed.**

8

18.    Downs has since stated that he "agree[s] the deputies had probable cause to issue the citation," and that "fuck" is a "curse" word that "can be offensive."

*Record Citations*

a.  Response of Defendant Downs to Interrogatory No. 8, propounded by Plaintiff Ennis ("I agree the deputies had probable cause to issue the citation. The word 'fuck' is one of the worst curse words which can be used and can be offensive.")

*Response*:  **Undisputed.**

19.    Downs has also since stated that his "actions upheld the Constitution of the United States."

*Record Citations*

a.  Response of Defendant Downs to Request for Admission No. 25, propounded by Plaintiff Ennis ("My actions upheld the Constitution of the United States.")

*Response*:  **Undisputed.**

20.    When Ennis continued to contest the enforcement actions as in violation of his First Amendment rights during his phone call with Downs, Downs referred him to Major Carl Edison, Downs's supervisor, for purposes of moving the complaint up through the chain of command, and he sent an email to Edison explaining how he had responded to Ennis's objections.

*Record Citations*

a.  Response of Defendant Edison to Request for Admission No. 14, propounded by Plaintiff Ennis (admitting he "occupied a senior status to Defendants Sanford and Mahaney with supervisory powers over them")
b.  Complaint (Dkt. No. 1) ¶¶ 39, 40
c.  Defendants' Answer to Complaint ¶ 40 (Dkt. No. 16): admitting that the email correspondence comprising Exhibit B "speaks for itself"
d.  Exhibit B to Complaint, Email correspondence on September 28, 2019, in which Defendant Downs referred the matter to Defendant Edison
e.  Responses of Defendant Downs to Requests for Admission Nos. 10, 12, 13, 14, and 15, propounded by Plaintiff Ennis (acknowledging he wrote these statements in the email correspondence comprising Exhibit B, which referred the matter to Defendant Edison)
f.  Response of Defendant Downs to Interrogatory Nos. 3 and 6, propounded by Plaintiff Ennis (admitting he produced the email correspondence comprising Exhibit B)

9

g. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims for Failure to State a Claim (Dkt. No. 22) at 2 (admitting Plaintiff Ennis spoke with Defendants Downs and Edison regarding the citation)
h. Response of Defendant Edison to Request for Admission Nos. 10, 11, 12 propounded by Plaintiff Ennis (admitting he received this email from Defendant Downs)

*Response*: **Undisputed.**

21. Edison spoke with Ennis by phone the following day, in a recorded conversation, during which he said he would not question the validity of these enforcement actions because he was not present at the scene.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 41
b. Response of Defendant Edison to Request for Admission No. 13, propounded by Plaintiff Ennis (admitting that this phone conversation took place)
c. Audio recording of phone call produced by Defendants (submitted on flash drive)

*Response*: **Undisputed.**

22. Rather, as Defendants themselves have characterized it, "Defendant Edison noted Plaintiff's complaint but allowed the citation to stand."

*Record Citations*

a. Initial Case Management Order (Dkt No. 19), Defendant's stated theory of the case ("Defendant Edison noted Plaintiff's complaint but allowed the citation to stand.")

*Response*: **Undisputed for purposes of summary judgment.**

23. Like the others involved, in response to this lawsuit, Edison has stated that he personally believes these law enforcement actions were "valid and legal."

*Record Citations*

a. Response of Defendant Edison to Request for Admission No. 10, propounded by Plaintiff Ennis (asserting his opinion that "the traffic stop was valid and legal")

*Response*: **Undisputed.**

24.     And, Edison has further claimed that his "actions upheld the Constitution of the United States."

> *Record Citations*
>
> a. Response of Defendant Edison to Request for Admission No. 25, propounded by Plaintiff Ennis ("My actions upheld the Constitution of the United States.")
>
> *Response*: **Undisputed.**

25.     During his phone call with Ennis, Edison indicated that there was nothing he could or would do about it, that the process would just have to play out in court, and he said he thought it would "be interesting" to see "what transpired" in court with the citation.

> *Record Citations*
>
> a. Complaint (Dkt. No. 1) ¶¶ 41, 68
> b. Defendants' Answer to Complaint ¶ 68 (Dkt. No. 16): Admitting that "Defendant Edison did not 'intervene' with the charge."
> c. Response of Defendant Edison to Request for Admission No. 16 (admitting having said he thought it would "be interesting to see what transpires in court on that one" or words to that effect)
> d. Audio recording of phone call produced by Defendants
>
> *Response*: **Undisputed for purposes of summary judgment.**

26.     The actions of Downs and Edison were also consistent with training, instruction, and guidance they had received from the SCSO under Sheriff Weatherford regarding its policies, practices, and customs in the interpretation and enforcement of the law.

> *Record Citations*
>
> a. Defendants' Answer to Complaint ¶¶ 15, 16, 17, 18 (Dkt. No. 16): Admitting that Defendants Sanford, Mahaney, Downs, and Edison were "at all times relevant to this Complaint" law enforcement officers "acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of [Sheriff] Weatherford, and under a delegation of authority from [Sheriff] Weatherford to carry out the actions, policies, customs, and practices at issue herein."

b. Responses of Defendant Downs to Request for Admission Nos. 19, 20, and 21 propounded by Plaintiff Ennis (admitting he has received training from the SCSO on the application of Tennessee laws)
c. Response of Defendant Edison to Request for Admission Nos. 19, 20, and 21, propounded by Plaintiff Ennis (same)
d. Response of Defendant Edison to Request for Admission No. 8, propounded by Plaintiff Ennis (admitting SCSO training on "First Amendment Auditors")

*Response*: **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist. The remainder of this statement is undisputed for purposes of summary judgment.**

27.    Within the last six years, at least two other people in Sumner County have been cited by Sumner County Sheriff deputies for displaying stickers with messages containing the word "fuck" and, upon information and belief and in light of the practices, policies, and customs at issue that, by Defendants' own admission, target political speech containing "curse" words that "can be offensive," in neither of these instances did the use of the word "fuck" appeal to any prurient sexual interests or otherwise relate to any sexual conduct.

*Record Citations*

a. Plaintiffs' Initial Disclosures: Sumner County Clerk's office records regarding alleged violations of T.C.A. § 55-8-187, dated April 20, 2020, records produced by Defendants in response to public records request
b. Plaintiffs' Initial Disclosures: Sumner County Clerk's office records regarding alleged violations of T.C.A. § 55-8-187, dated April 21, 2020, records produced by Defendants in response to public records request

*Response*: **Disputed. The other two incidents cited by Plaintiffs did not concern "political speech." According to the citations cited herein, one sticker contained the message "F**k Off," and the other contained the phrase "f**king." (*See* Plaintiffs' Initial Disclosures.) The record does not demonstrate that these were "political speech," nor that they were non-prurient uses of the term. Further disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.**

28.    All Defendants, as well as County Sheriff Weatherford and County Chief Executive Anthony Holt, stood in solidarity and continue to stand in solidarity in supporting these law enforcement actions against Ennis as being entirely lawful, on the basis that Ennis's display of the

window sticker containing the word "Fuck" is subject to lawful suppression under of T.C.A. § 55-8-187 because, even though the word has both sexual and non-sexual meanings, it is a "curse word" that "can be offensive."

*Record Citations*

a. Response of Defendant Sanford to Request for Admission No. 1, propounded by Ennis (admitting that the sticker "does not convey a message related to sexual conduct or a sexual interest," but arguing: "Tenn. Code Ann. § 55-8-187 prohibits not just bumper stickers that contain sexual content but also stickers which are 'patently offensive.' 'Patently offensive' is defined as 'that which goes substantially beyond customary limits of candor in describing or representing such matters.' Tenn. Code Ann. § 39-17-901(11). Plaintiff's sticker was 'patently offensive' as defined by statute.")

b. Response of Defendant Mahaney to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

c. Response of Defendant Downs to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

d. Response of Defendant Edison to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

e. Response of Sheriff Weatherford to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

f. Response of County Executive Holt to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

g. Response of Defendant Mahaney to Interrogatory No. 15, propounded by Plaintiff Ennis ("Fuck" is "a curse word which can be offensive")

h. Response of Defendant Downs to Interrogatory No. 8, propounded by Plaintiff Ennis ("I agree the deputies had probable cause to issue the citation. The word 'fuck' is one of the worst curse words which can be used and can be offensive.")

i. Response of Defendant Downs to Interrogatory Nos. 12 and 13, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive to many people")

j. Response of Defendant Edison to Interrogatory No. 12, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive to many people")

k. Response of Sheriff Weatherford to Interrogatory No. 16, propounded by Plaintiff Ennis ("Fuck" is "a curse word")

l. Response of County Executive Holt to Interrogatory No. 16, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive")

*Response*: **Disputed that this fact is material as it concerns actions taken after the incident at issue in this lawsuit. Further disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.**

29. For this reason, Defendants, Sheriff Weatherford, and County Executive Holt all deny any violation of any constitutional rights and insist they lawfully can and will continue to take similar

13

enforcement actions against such "patently offensive" speech under the auspices of T.C.A. § 55-8-187.

*Record Citations*

a. Initial Case Management Order (Dkt. No. 19), Defendant's stated theory of the case: "Defendants maintain they had probable cause to pull Plaintiff over and issue the citation, as Plaintiff's window sticker was 'patently offensive' as defined by the above statutes. Accordingly, none of Defendants violated Plaintiff's civil rights or any other rights."

b. Defendants' Answer to Complaint (Dkt. No. 16) ¶¶ 1, 2, 3, 4, 23, 29, 31, 32, 38, 39, 40, 41, 42, 59, 60, 61, 62, 63, 64, 65, 67, 68, 70, 71, 73, 75, 81, and 87 (denying any constitutional violations)

c. Responses of County Executive Holt to Request for Admission Nos. 11, 12, 13, 14, 16, 17, 18, 19, 20, and 24 (same)

d. Defendants' Answer, Special and Affirmative Defenses, ¶ 9 ("Defendants aver that their policies and procedures are appropriate.")

e. Defendants' Answer, Special and Affirmative Defenses, ¶ 10 ("Plaintiffs are solely responsible for the alleged damages or injuries claimed in this Complaint.")

f. Response of Defendants Sanford and Mahaney to Request for Admission No. 21 (in response to a request that they admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, Defendants responded, "Admitted if a bumper sticker is 'patently offensive,' then the law will be enforced.")

g. Response of Defendants Sanford and Mahaney to Request for Admission No. 22 (in response to a request that they admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message could not reasonably be regarded as conveying a direct personal insult to anyone, Defendants responded, "Admitted if a bumper sticker is 'patently offensive,' then the law will be enforced.")

h. Response of Defendant Edison to Request for Admission No. 22 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, Defendant Edison denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

i. Response of Defendant Edison to Request for Admission No. 23 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message could not reasonably be regarded as conveying a direct personal insult to anyone, Defendant Edison denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

857833.1/020200106

j. Response of Defendant Edison to Request for Admission No. 24 (in response to a request he admit that "the SCSO has continued interpreting and applying T.C.A. § 55-8-187 as enforceable in the same manner as it did at the time of the traffic stop," Defendant Edison said, "Admitted. If a bumper sticker is 'patently offensive,' then the law will be enforced.")

k. Response of Defendant Downs to Request for Admission No. 22 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, Defendant Downs denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

l. Response of Defendant Downs to Request for Admission No. 23 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message could not reasonably be regarded as conveying a direct personal insult to anyone, Defendant Downs denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

m. Response of Defendant Downs to Request for Admission No. 24 (in response to request he admit that "the SCSO has continued interpreting and applying T.C.A. § 55-8-187 as enforceable in the same manner as it did at the time of the traffic stop," Defendant Downs said, "Admitted. If a bumper sticker is 'patently offensive,' then the law will be enforced.")

n. Response of County Executive Holt to Request for Admission No. 17 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, County Executive Holt denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

o. Response of Sheriff Weatherford to Request for Admission No. 18 (in response to a request that he admit the SCSO's policies, practices, and customs involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, Sheriff Weatherford denied the request, but then said, "If a bumper sticker is 'patently offensive,' then the law will be enforced.")

p. Response of Sheriff Weatherford to Request for Admission No. 21 (in response to a request that he admit the SCSO's policies, practices, and customs continue to involve enforcing T.C.A. § 55-8-187 against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word "fuck" even if the message is unrelated to sexual activity or sexual interests, Sheriff Weatherford responded, "Admitted if a bumper sticker is 'patently offensive,' then the law will be enforced.")

q. Response of Sheriff Weatherford to Request for Admission No. 22 (in response to a request that he admit he has continued to provide training, instruction, or guidance to the SCSO personnel in accordance with the policies, practices, or customs of the SCSO that interpret and apply T.C.A. § 55-8-187 as being enforceable against messages on bumper stickers, window signs, or other markings on or in vehicles containing the word

15

'fuck' even if the message could not reasonably be regarded as conveying a direct personal insult to anyone," Sheriff Weatherford responded, "Admitted if a bumper sticker is 'patently offensive,' then the law will be enforced.")

r. SCSO Policy and Procedures Manual, Section F(1), produced by Defendants: "Purpose of Traffic Citations: Traffic citations should affect those cited in such a manner that they will not commit the violations again. Enforcement shall be equitable. For effectiveness, traffic enforcement should be continuous and consistent."

*Response*: **Disputed that this fact is material as the Organizational Plaintiffs have no standing in this case and no further action has been taken regarding to Plaintiff Ennis's window sticker. Further disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.**

30. Ennis was prosecuted for more than three months in the General Sessions Court of Sumner County, where he mounted a strenuous constitutional defense through legal counsel paid by Plaintiffs FPC and FPF, until the County prosecutor finally abandoned the matter *nolle prosequi* on January 3, 2020.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶ 42
b. Memorandum of Law in the General Sessions Court for Sumner County, filed January 3, 2020, Case No. 2019-CR-10970, produced by Plaintiffs and Defendants
c. Dismissal Order, dated January 3, 2020, from the General Sessions Court for Sumner County, Case No. 2019-CR-10970, produced by Plaintiffs and Defendants
d. Defendants' Answer to Complaint ¶ 42 (Dkt. No. 16): "It is admitted the State abandoned the matter *nolle prosequi* on January 3, 2020."

*Response*: **Disputed that this fact is material or relevant. Further disputed that any of these Defendants were involved in prosecuting Plaintiff Ennis in the General Sessions Court of Sumner County. Further disputed as to the characterization of Plaintiff Ennis's defense to the traffic citation. Further disputed that the matter was prosecuted by a "County prosecutor"; cases are prosecuted by the District Attorney General, who is an employee of the State. Undisputed for purposes of summary judgment that the District Attorney General dismissed the citation *nolle prosequi* on January 3, 2020.**

31. No one within the SCSO ever received any complaints from the public about Plaintiff Ennis's sticker, either before or after he was issued the citation at issue.

*Record Citations*

a. Responses of Defendants Sanford and Mahaney to Request for Admission No. 10 and 11, propounded by Plaintiff Ennis (admitting they did not observe any other drivers being distracted by the sticker or receive any complaints from any drivers about the sticker)

b. Response of Defendant Sanford to Request for Production of Documents No.19, propounded by Plaintiff Ennis (admitting he has no documents concerning any complaints from the public about the sticker)

c. Response of Defendant Mahaney to Request for Production of Documents No. 20, propounded by Plaintiff Ennis (same)

d. Response of Defendant Downs to Request for Production of Documents No. 15, propounded by Plaintiff Ennis (same)

e. Response of Edison Mahaney to Request for Production of Documents No. 12, propounded by Plaintiff Ennis (same)

f. Response of Sheriff Weatherford to Request for Production of Documents No. 12, propounded by Plaintiff Ennis (same)

*Response*: **Undisputed for purposes of summary judgment.**

**32.**    Defendant County of Sumner, Tennessee is the corporate governmental entity established under the laws of the State of Tennessee, *see* T.C.A. §§ 5-1-101 & 5-1-103, ultimately responsible for managing all business of the County, which includes the policies, customs, and practices at issue in this case, through its elected county officials, *see* T.C.A. §§ 5-1-104(a) & 6-2-1-201(28)(A), who include Sheriff Weatherford as well as County Executive Holt.

*Record Citations*

a.    Complaint (Dkt. No. 1) ¶ 12

b.    Defendants' Answer to Complaint ¶ 12 (Dkt. No. 16): "The factual allegations contained in Paragraph 12 are admitted."

c.    Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 2 ("As Plaintiffs have named Sumner County as a Defendant, suing the remaining Defendants [i.e., Anthony Holt, Sonny Weatherford, Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison] in their official capacities is redundant and therefore fails to state a claim for which relief may be granted."); *id.* at 4 ("The official capacity suits against these parties are the same as a suit against the County."); *id.* ("As such, any official capacity claims against Defendants (other than Sumner County itself) fail to state a claim for which relief may be granted, as they are duplicative of the claim against the municipality Sumner County.")

d.    T.C.A. §§ 5-1-101, 5-1-103, 5-1-104(a), 6-2-1-201(28)(A)

e.    The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d

972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage)

*Response*:  **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.  Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist.  The remainder of this statement is undisputed for purposes of summary judgment.**

33.    The County government includes the SCSO maintained by Sheriff Weatherford.

*Record Citations*

   a.  Complaint (Dkt. No. 1) ¶ 13
   b.  Defendants' Answer to Complaint ¶ 13 (Dkt. No. 16): "The factual allegations contained in Paragraph 13 are admitted."
   c.  The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage)

*Response*:  **Undisputed.**

34.    The County is thus responsible for the oversight and management of the affairs conducted by the Sheriff and the SCSO he maintains, including (1) establishing and implementing the policies, customs, and practices concerning appointment, training, supervision, discipline, and retention of the SCSO personnel, and (2) the law enforcement activities of the SCSO peace officers, including Defendants Sanford, Mahaney, Downs, and Edison, who act under a delegation of authority from the Sheriff to carry out of the policies, customs, and practices of the SCSO.

*Record Citations*

857833.1/020200106

a. Complaint (Dkt. No. 1) ¶¶ 14, 15, 16, 17, 18, 73

b. Defendants' Answer to Complaint ¶ 14 (Dkt. No. 16): "The factual allegations contained in Paragraph 14 are admitted."

c. Defendants' Answer to Complaint ¶¶ 15, 16, 17, 18 (Dkt. No. 16): Admitting that Defendants Sanford, Mahaney, Downs, and Edison were "at all times relevant to this Complaint" law enforcement officers "acting under the color of Tennessee law as an agent, servant, and employee of the Sumner County Sheriff's Office, under the supervision, training, and direction of [Sheriff] Weatherford, and under a delegation of authority from [Sheriff] Weatherford to carry out the actions, policies, customs, and practices at issue herein."

d. Defendants' Answer to Complaint ¶ 65 (Dkt. No. 16): Admitting Sheriff Weatherford's exercise of authority over criminal investigations, searches, seizures, traffic citations, and training and supervision of SCSO deputies, including Defendants Sanford, Mahaney, Downs, and Edison, as well as the development of SCSO policies concerning all the same)

e. Admissions of Sheriff Weatherford in response to Request for Admission Nos. 10, 11, 12, 13, 15, 16, and 20, propounded by Plaintiff Ennis (admitting exercise of authority over and responsibility for criminal investigations, searches, seizures, traffic citations, training and supervision SCSO deputies, and development of SCSCO policies concerning all the same)

f. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 2 ("As Plaintiffs have named Sumner County as a Defendant, suing the remaining Defendants [i.e., Anthony Holt, Sonny Weatherford, Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison] in their official capacities is redundant and therefore fails to state a claim for which relief may be granted."); *id.* at 4 ("The official capacity suits against these parties are the same as a suit against the County."); *id.* ("As such, any official capacity claims against Defendants (other than Sumner County itself) fail to state a claim for which relief may be granted, as they are duplicative of the claim against the municipality Sumner County.").

g. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 1 ("For all times relevant Chris Sanford ('Defendant Sanford') and Kyle Mahaney ('Defendant Mahaney') were deputies employed by the Sumner County Sheriff's Office."); *id.* at 2 ("After receiving the citation, Plaintiff Ennis spoke with Sumner County Sheriff's Office employees Justin Downs ('Defendant Downs') and Carl Edison ('Defendant Edison') regarding the citation.")

h. Response of Sheriff Weatherford to Request for Admission No. 20, propounded by Plaintiff Ennis (admitting that he and the deputies of the SCSO are trained on the enforcement of Tennessee laws)

i. Responses of Defendant Sanford to Request for Admission Nos. 18, 19, 23, propounded by Plaintiff Ennis (admitting he has received training from the SCSO on the application of Tennessee laws)

j. Responses of Defendant Mahaney to Request for Admission Nos. 18, 19, 23, propounded by Plaintiff Ennis (same)

19

k.    Responses of Defendant Downs to Request for Admission Nos. 19, 20, and 21 propounded by Plaintiff Ennis (same)

l.    Response of Defendant Edison to Request for Admission Nos. 19, 20, and 21, propounded by Plaintiff Ennis (same)

m.    Response of Defendant Edison to Request for Admission No. 8, propounded by Plaintiff Ennis (admitting SCSO training on "First Amendment Auditors")

n.    The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage).

*Response*:  **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact.  Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist.  The remainder of this statement is undisputed for purposes of summary judgment.**

35.    The County is thus aware or reasonably presumed to be aware of and have control over all such law enforcement activities, policies, customs, and practices of the Sheriff and the SCSO.

*Record Citations*

a.    Complaint (Dkt. No. 1) ¶ 73

b.    Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 2 ("As Plaintiffs have named Sumner County as a Defendant, suing the remaining Defendants [i.e., Anthony Holt, Sonny Weatherford, Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison] in their official capacities is redundant and therefore fails to state a claim for which relief may be granted."); *id.* at 4 ("The official capacity suits against these parties are the same as a suit against the County."); *id.* ("As such, any official capacity claims against Defendants (other than Sumner County itself) fail to state a claim for which relief may be granted, as they are duplicative of the claim against the municipality Sumner County.")

c.    Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 1 ("For all times relevant Chris Sanford ('Defendant Sanford') and Kyle Mahaney ('Defendant Mahaney') were deputies employed by the Sumner County Sheriff's Office."); *id.* at 2 ("After receiving the citation, Plaintiff Ennis spoke with Sumner County Sheriff's Office employees Justin Downs ('Defendant Downs') and Carl Edison ('Defendant Edison') regarding the citation.")

20

<dl>
<dt>d.</dt>
<dd>Response of Sheriff Weatherford to Request for Admission No. 20, propounded by Plaintiff Ennis (admitting that he and the deputies of the SCSO are trained on the enforcement of Tennessee laws)</dd>

<dt>e.</dt>
<dd>Responses of Defendant Sanford to Request for Admission Nos. 18, 19, 23, propounded by Plaintiff Ennis (admitting he has received training from the SCSO on the application of Tennessee laws)</dd>

<dt>f.</dt>
<dd>Responses of Defendant Mahaney to Request for Admission Nos. 18, 19, 23, propounded by Plaintiff Ennis (same)</dd>

<dt>g.</dt>
<dd>Responses of Defendant Downs to Request for Admission Nos. 19, 20, and 21, propounded by Plaintiff Ennis (same)</dd>

<dt>h.</dt>
<dd>Response of Defendant Edison to Request for Admission Nos. 19, 20, and 21, propounded by Plaintiff Ennis (same)</dd>

<dt>i.</dt>
<dd>Response of Defendant Edison to Request for Admission No. 8, propounded by Plaintiff Ennis (admitting SCSO training on "First Amendment Auditors")</dd>

<dt>j.</dt>
<dd>The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage).</dd>
</dl>

*Response*: **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist.**

**36.** This includes the enforcement actions, policies, practices, and customs of the Sheriff, the SCSO, and Defendants Sanford, Mahaney, Downs, and Edison giving rise to Plaintiffs' claims, which the County has expressly or tacitly ratified, approved, and supported.

*Record Citations*

<dl>
<dt>a.</dt>
<dd>Complaint (Dkt. No. 1) ¶¶ 66, 72</dd>

<dt>b.</dt>
<dd>Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 2 ("As Plaintiffs have named Sumner County as a Defendant, suing the remaining Defendants [i.e., Anthony Holt, Sonny Weatherford, Chris Sanford, Kyle Mahaney, Justin Downs, and Carl Edison] in their official capacities is redundant and therefore fails to state a claim for which relief may be granted."); *id.* at 4 ("The official capacity suits against these parties are the same as a suit against the County."); *id.* ("As such, any official capacity claims against Defendants (other than Sumner County itself) fail to state a</dd>
</dl>

claim for which relief may be granted, as they are duplicative of the claim against the municipality Sumner County.")

c. Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claim for Failure to State a Claim (Dkt. No. 22) at 1 ("For all times relevant Chris Sanford ('Defendant Sanford') and Kyle Mahaney ('Defendant Mahaney') were deputies employed by the Sumner County Sheriff's Office."); *id.* at 2 ("After receiving the citation, Plaintiff Ennis spoke with Sumner County Sheriff's Office employees Justin Downs ('Defendant Downs') and Carl Edison ('Defendant Edison') regarding the citation.")

d. Response of Sheriff Weatherford to Request for Admission No. 20, propounded by Plaintiff Ennis (admitting that he and the deputies of the SCSO are trained on the enforcement of Tennessee laws)

e. Response of Defendant Mahaney to Interrogatory No. 15, propounded by Plaintiff Ennis ("Fuck" is "a curse word which can be offensive")

f. Response of Defendant Downs to Interrogatory No. 8, propounded by Plaintiff Ennis ("I agree the deputies had probable cause to issue the citation. The word 'fuck' is one of the worst curse words which can be used and can be offensive.")

g. Response of Defendant Downs to Interrogatory Nos. 12 and 13, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive to many people")

h. Response of Defendant Edison to Interrogatory No. 12, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive to many people")

i. Response of Sheriff Weatherford to Interrogatory No. 16, propounded by Plaintiff Ennis ("Fuck" is "a curse word")

j. Response of County Executive Holt to Interrogatory No. 16, propounded by Plaintiff Ennis ("Fuck" is "a curse word that can be offensive")

k. The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage).

*Response*: **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. Further disputed that any unconstitutional policies, customs, or practices at issue in this case exist.**

**37.** Defendants admit Ennis's window sticker "does not convey a message related to sexual conduct or a sexual interest," yet go on to argue that, "Tenn. Code Ann. § 55-8-187 prohibits not just bumper stickers that contain sexual content but also stickers which are 'patently offensive,'" and that, "Plaintiff's sticker was 'patently offensive' as defined by statute" because it "'goes

22

substantially beyond customary limits of candor in describing or representing such matters,' Tenn.

Code Ann. § 39-17-901(11)."

*Record Citations*

a. Initial Case Management Order (Dkt. No. 19), Defendants' stated theory of the case: "Defendants maintain they had probable cause to pull Plaintiff over and issue the citation, as Plaintiff's window sticker was 'patently offensive' as defined by the above statutes. Accordingly, none of Defendants violated Plaintiff's civil rights or any other rights."

b. Response of Defendant Sanford to Request for Admission No. 1, propounded by Ennis (admitting that the sticker "does not convey a message related to sexual conduct or a sexual interest," but arguing: "Tenn. Code Ann. § 55-8-187 prohibits not just bumper stickers that contain sexual content but also stickers which are 'patently offensive.' 'Patently offensive' is defined as 'that which goes substantially beyond customary limits of candor in describing or representing such matters.' Tenn. Code Ann. § 39-17-901(11). Plaintiff's sticker was 'patently offensive' as defined by statute.")

c. Response of Defendant Mahaney to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

d. Response of Defendant Downs to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

e. Response of Defendant Edison to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

f. Response of Sheriff Weatherford to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

g. Response of County Executive Holt to Request for Admission No. 1, propounded by Plaintiff Ennis (same)

h. Response of Defendant Sanford to Request for Admission No. 10, propounded by Plaintiff Ennis ("I was of the opinion it had the potential to distract others and violated Tenn. Code Ann. § 55-8-187 as 'patently offensive.'")

i. Response of Defendant Mahaney to Request for Admission No. 10, propounded by Plaintiff Ennis ("I was of the opinion it had the potential to distract others and violated Tenn. Code Ann. § 55-8-187 as 'patently offensive.'")

j. Response of Defendant Sanford to Request for Admission No. 13, propounded by Plaintiff Ennis ("the patently offensive sticker gave me probable cause to stop Plaintiff Ennis' vehicle")

k. Response of Defendant Mahaney to Request for Admission No. 13, propounded by Plaintiff Ennis ("the patently offensive sticker gave me probable cause to stop Plaintiff Ennis' vehicle")

l. Response of Defendant Downs to Request for Admission No. 14, propounded by Plaintiff Ennis (asserting that Ennis was properly cited because "some may find that offensive")

m. Response of Defendant Downs to Interrogatory No. 8, propounded by Plaintiff Ennis ("agree[ing]" that Sanford and Mahaney had probable cause for the citation because "fuck" is a "curse word" that "can be offensive")

857833.1/020200106

n. Response of Defendant Downs to Interrogatory Nos. 12 and 13, propounded by Plaintiff Ennis ("Fuck" is a "curse word" that "can be offensive")

o. Response of Defendant Edison to Interrogatory No. 12, propounded by Plaintiff Ennis (same)

p. Response of Sheriff Weatherford to Interrogatory No. 16, propounded by Plaintiff Ennis (same)

q. Response of County Executive Holt to Interrogatory No. 16, propounded by Plaintiff Ennis (same)

*Response*: **Disputed to the extent this statement attempts to couch a legal conclusion as a statement of fact. The remainder of this statement is undisputed for purposes of summary judgment.**

**38.** Plaintiffs FPC and FPF are non-profit, public interest organizations whose core purposes involve advancing and defending the individual constitutional liberties of their members, including their Tennessee members like Ennis, who seek to peaceably exercise their rights to speak—especially concerning restrictions on their Second Amendment rights—without being subjected to unconstitutional suppression, retaliation, search, or seizure in violation of the First and Fourth Amendments.

*Record Citations*

a. Complaint (Dkt. No. 1) ¶¶ 6, 7, 8, 9, 10, 11

b. Plaintiff FPC's verified response to Interrogatory Nos. 4, 6 propounded by Defendant Sumner County

c. Plaintiff FPF's verified response to Interrogatory Nos. 4, 6 propounded by Defendant Sumner County

d. The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage)

*Response*: **Undisputed for purposes of summary judgment.**

**39.** Plaintiff Ennis is a member of FPC and FPF.

*Record Citations*

    a.  Complaint (Dkt. No. 1) ¶ 5

    b.  Plaintiff Ennis's verified response to Interrogatory No. 27 propounded by Defendants Sanford, Mahaney, Downs, Edison, and Sumner County.

    c.  Plaintiff FPC's verified response to Interrogatory No. 21 propounded by Defendant Sumner County.

    d.  Plaintiff FPF's verified response to Interrogatory No. 21 propounded by Defendant Sumner County.

    e.  The above factual allegations are otherwise not subject to genuine or reasonable dispute. *Duncan v. Tennessee Valley Authority Retirement System*, 123 F.Supp.3d 972, 981 (M.D. Tenn. 2015) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) ("An issue of fact is 'genuine'" so as to create a triable issue sufficient to defeat a summary judgment motion "only if a reasonable jury could find for the non-moving party" on that issue.); *see also Metris-Shamoon v. City of Detroit*, ___ F.Supp.3d ___, 2021 WL 2635403, *7 (E.D. Mich. 2021) (finding a triable issue of fact existed because the fact was "not established beyond a reasonable dispute" at the summary judgment stage)

*Response*:  **Undisputed for purposes of summary judgment.**

**40.**    The word "Fuck" has both sexual and non-sexual meanings.

*Record Citations*

    a.  Compl. ¶ 35 and footnote 2

    b.  LEXICO, Oxford English and Spanish Dictionary online; last visited August 23, 2020 (https://www.lexico.com/en/definition/fuck) (the word "fuck" is "[u]sed alone or as a noun or verb in various phrases to express annoyance, contempt, or impatience" concerning something or someone)

    c.  Response of Defendant Mahaney to Interrogatory No. 15 and to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (admitting the word "Fuck" has "sexual and non-sexual" meanings)

    d.  Response of Defendant Downs to Interrogatory Nos. 12 and 13, and to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (same)

    e.  Response of Defendant Edison to Interrogatory No. 12, and to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (same)

    f.  Response of Sheriff Weatherford to Interrogatory No. 16, and to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (same)

    g.  Response of County Executive Holt to Interrogatory No. 16, and to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (same)

    h.  Response of Defendant Sanford to Request for Admission Nos. 3 and 4, propounded by Plaintiff Ennis (same)

*Response*:  **Undisputed for purposes of summary judgment.**

857833.1/020200106

41.   Jurisdiction is proper over Plaintiff Ennis's claims against Defendants.

*Record Citations*

   a.   Complaint (Dkt. No. 1) ¶ 19
   b.   Defendants' Answer to Complaint ¶ 19 (Dkt. No. 16)

*Response*: **Undisputed.**

42.   Venue is proper in this district.

*Record Citations*

   a.   Complaint (Dkt. No. 1) ¶ 12
   b.   Defendants' Answer to Complaint ¶ 21 (Dkt. No. 16)

*Response*: **Undisputed.**

Respectfully submitted:


*/s/ Sarah L. Locker*
Leah May Dennen, #12711
Sumner County Law Director
Benjamin C. Allen, #35923
355 North Belvedere Drive, Room 303
Gallatin, TN  37066
615-451-6060
LeahMay@sumnercountytn.gov
Ben@sumnercountytn.gov

Thomas B. Russell, #26011
Sarah L. Locker, #31994
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN  37201
615-244-4994
trussell@gsrm.com; slocker@gsrm.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Eugene Volokh
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
volokh@law.ucla.edu

*Attorney for Plaintiffs*

Lloyd R. Tatum
Tatum & Tatum
P O Box 293
124 E Main Street
Henderson, TN 38340
lloydtatum1@yahoo.com

*Attorneys for Plaintiffs*

Michael Sousa
3232 Governor Drive, Suite A
San Diego, CA 92122
msousa@msousalaw.com

*Attorney for Plaintiffs*

Raymond DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
law.rmd@gmail.com

*Attorneys for Plaintiffs*

*/s/ Sarah L. Locker*

27