IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| NICHOLAS ENNIS, FIREARMS POLICY COALITION, INC., and FIREARMS POLICY FOUNDATION,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF SUMNER, TENNESSEE; CHRIS SANFORD, KYLE MAHANEY, JUSTIN DOWNS, and CARL EDISON in their individual capacities,<br><br>    Defendants. | Civil Action No. 3:20-cv-805<br><br>Chief Judge Waverly D. Crenshaw<br>Mag. Judge Barbara D. Holmes<br><br>JURY DEMAND |

**Plaintiffs' Reply Brief in Support of Motion for Summary Judgment**

The record indisputably establishes the following essential and dispositive facts:

The "Fuck Gun Control" speech at issue does *not* convey any message related to sexual conduct or sexual interest and does *not* convey any direct personal insult. SOMF ¶¶ 28, 29.

All Defendants, Sheriff Weatherford, and County Executive Holt have: (1) declared that Tenn. Code Ann. § 55-8-187 *expressly* authorizes them to suppress messages on vehicles *solely* because the speech contains "offensive" "curse words" like "fuck," SOMF ¶¶ 28, 29; (2) declared the SCSO will continue to "enforce the law" against such messages, SOMF ¶¶ 28, 29, 36; (3) stood firmly behind the targeting of Ennis's speech (and Weatherford and Holt have ratified or approved it), SOMF ¶¶ 18, 19, 21, 23, 28, 29; (4) admitted that the enforcement actions against Ennis, and their stated intentions to continue such actions, are consistent with the SCSO's policies, customs, and practices, as well as the training, instruction, and guidance provided to SCSO personnel, SOMF ¶¶ 15, 26, 32, 34, 36; and (5) admitted that Defendants Sanford, Mahaney, Downs, and Edison were acting under the color of Tennessee law as agents of the SCSO, and that the County

1

is ultimately responsible for the SCSO's policies, practices, and customs, SOMF ¶¶ 32, 34, 35, 36.

Defendants have thus repeatedly asserted that they meant to do exactly what they did to Ennis, on the theory that Tenn. Code Ann. § 55-8-187 is clearly on their side, and that they will do the same thing again under the same circumstances because "the law will be enforced" against any such speech displayed on vehicles. SOMF ¶ 28, 29, 36.

Rather than responding to this motion with *evidence* or *specific facts* in opposition, Defendants attempt to avoid the judgment by advancing—for the first time—abstract *legal* theories as to why they can't or shouldn't be held responsible for their actions and stated intentions in the enforcement of § 55-8-187. *Now* their theory is that their actions stemmed from a "reasonable" albeit perhaps "mistaken" interpretation of a supposed "ambiguity" within that statute, under which any SCSO law enforcement officer could believe it forbids messages that contain "curse words" like "fuck" that are or can be "offensive." Def. Resp. at 5-9, 11-12. Defendants' late-stage attempt to change the narrative with newly crafted legal theories, devoid of any factual support, is no way to respond to this motion. Rather, Defendants' about-face starkly reveals a lack of belief in the position they first staked out unequivocally in the record—that the law is clearly on their side. This attempt to play it both ways speaks volumes about how the case must be resolved.

Anyway, while the *title* of Tenn. Code Ann. § 55-8-187 is "obscene or offensive bumper stickers," everything about the legally binding *substance* of the prohibition *and* the definitional terms in § 39-17-901 expressly incorporated into § 55-8-187 makes unmistakably clear that no freestanding prohibition exists for "patently offensive" speech, as explained. Motion at 10-13.[1] In fact, a previous version of § 55-8-187 proscribed "the display of obscene *or* patently offensive

---

[1] Also, as much as Defendants may wish to rely on the statute's title, "Headings to sections in this code . . . shall not be construed as part of the law." Tenn. Code Ann. § 1-3-109.

movies, bumper stickers, window signs or other markings on or in a motor vehicle," but the statute was amended in 2004 to change "or" to "and," so as to expressly proscribe *only* "obscene *and* patently offensive" speech, 2004 Pub.Acts, c. 796, § 1, as it has now for the last 18 years. That same year, the state's Attorney General expressly declared his own opinion that the statute (consistent with long-established First Amendment law) *only* reaches "obscene" speech—i.e., that which appeals to "the prurient interest," Tenn. Op. Atty. Gen. No. 04-086, 2004 WL 1178408, *2.

There's nothing "reasonable" about concluding that this law authorizes suppression of speech like Ennis's in the face of these unmistakably clear mandates and guidance about the law. Because this untenable theory is the sole foundation for their claim that no liability exists under the First or Fourth Amendment, Defendants' whole house falls down, and along with it their claim that the organizational plaintiffs lack standing since this claim is based on the same groundless notion that no actionable constitutional injury exists, Def. Resp. at 20-22; *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (organizational plaintiffs derive their constitutional standing from that of their members with standing to sue in their own right).

Note too that, in denying the existence of any constitutional injury under the First Amendment, Defendants address solely Plaintiffs' *retaliation* claim, Compl. ¶ 79 et seq., and the more exacting elements of that claim, Def. Opp. at 10-12. They fail to address at all, much less point to any disputed facts regarding, Plaintiffs' traditional First Amendment claim (distinctly alleged in the Complaint, ¶ 78). "'[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.'" *Cadle v. Jefferson*, 2020 WL 966578, *6 (W.D. Ky. 2020) (citation omitted).

Defendants fare no better with their theories of why any liability that exists doesn't attach. Their theory under supervisory liability principles is necessarily of limited reach in that it could,

3

at best, apply to only two of the five Defendants—Downs and Edison. Def. Resp. at 3-4. Beyond that, the theory sits on two assertions directly contradicted by the record: that Downs and Edison played no role in the constitutional violations and had no authority to prevent any of the violative actions. *Id.* It is enough that the supervisor "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Both Downs and Edison have emphatically supported the actions targeting Ennis's speech for suppression. SOMF ¶¶ 17, 18, 23. They were the chain of command charged with directly handling Ennis's complaints about having been illegally targeted, and both have expressly declared that their own "*actions*" in the matter "upheld the Constitution." SOMF ¶¶ 19, 24. Indeed, Defendants have characterized Edison's role and authority as central, saying that he "noted Plaintiff's complaint but *allowed* the citation to stand." SOMF ¶ 22 (italics added).

This isn't like *Hill*, Def. Resp. at 4, where no evidence showed the supervisors' actions advanced a municipal policy, practice, or custom, *Hill v. City of Southfield*, 2000 WL 331980 at *3 (6th Cir. 2000). Defendants' theory that no liability attaches to the County under *Monell* principles, Def. Resp. at 14-17, is similarly wrong. Defendants' own emphatic and repeated assertions that they can and will continue to suppress the speech of concern under the auspices of § 55-8-187, SOMF ¶ 28, 29, 36, undoubtedly demonstrate an established policy, practice, or custom of enforcement. And the assertions of Sheriff Weatherford and County Executive Holt themselves also clearly demonstrate that a person with final decision making authority has ratified or acted with deliberate indifference in permitting such enforcement actions, which is alone enough for municipal liability to attach. *Cline v. City of Mansfield*, 745 F.Supp.2d 773, 791 (E.D. Ohio 2010).

Defendants' claim that any relief for their past constitutional violations is "barred" under the Eleventh Amendment, Def. Resp. at 18, is wrong too: Eleventh Amendment sovereign

4

immunity applies only to *states* and thus only ever concerns claims against "*state* officials in their official capacities"—and even then only claims for *monetary* damages, not those seeking injunctive or declaratory relief. *Diaz v. Mich. Dept. of Corrections*, 703 F.3d. 956, 964 (6th Cir. 2013).

Absent the requested relief in this case, Defendants would not only improperly avoid any liability for their clearly unconstitutional actions in the past, but they would remain free to continue perpetrating the same conduct on their untenable theory that, while enforcing § 55-8-187 against such speech may be "mistaken"—i.e., *un*constitutional—it is nevertheless still "reasonable."

With their failure to cite any evidence of any material fact in dispute precluding summary judgment—much less any evidence supporting a verdict in their favor—Defendants' response to this motion only highlights the clear "absence of evidence" to support their troubled case and compels judgment. *Fenney v. Wal-Mart Stores East, LP*, 441 F.Supp.3d 635, 638 (W.D. Tenn. 2020).[2]

Dated this 6th day of January 2022

Respectfully Submitted,

*/s/ Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
*Admitted Pro Hac Vice*

*/s/ Michael P. Sousa*
Michael P. Sousa
Law Offices of Michael P. Sousa, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel.: 858-453-6122
Email: msousa@msousalaw.com
*Admitted Pro Hac Vice*

*/s/ Lloyd R. Tatum*
Lloyd R. Tatum
BPR # 011326
Tatum & Tatum
124 E. Main Street
P.O. Box 293
Henderson, TN 38340
Tel.: 731-989-3493
Email: Lloydtatum1@yahoo.com
*Local Co-Counsel*

*/s/ Eugene Volokh*
Eugene Volokh
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
Tel.: 310-206-3926
Email: volokh@law.ucla.edu
*Admitted Pro Hac Vice*

---

[2] Defendant Sanford has failed to file any response at all to Plaintiffs' motion.

**CERTIFICATE OF SERVICE**

       Plaintiffs certify that on the 6th day of January 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

6

Case 3:20-cv-00805   Document 44   Filed 01/06/22   Page 6 of 6 PageID #: 612